DANA and HAYDEN *vs.* BINNEY and MORRIS

WINDSOR,
*February,*
1835.

B held certain promissory notes against W, which were secured by a mortgage on real estate. These notes were afterwards given up to W, upon his executing new notes for the sum due, but without any intention on the part of B to affect his mortgage security. *Held* that this exchange of notes did not defeat the mortgage, so as to enable the creditors of W to levy upon and hold the land against B :—especially, as it did not appear that they had been misled, or induced to believe the mortgage debt actually paid.

This was ejectment for a tract of land in the town of Plymouth. On the 5th day of November 1829, one Timothy Wetherbee conveyed the land in question to the defendant Binney, by a deed of mortgage duly acknowledged and recorded, conditioned as follows :

"Providing nevertheless, and the above deed is given on this condition, that whereas the said Timothy Wetherbee has this day made, executed and delivered unto the said Moses Binney four notes of hand, bearing even date with these presents, for the sum of three hundred and fifty dollars, to be paid at different times :— the first note for one hundred bushels of wheat, on interest, payable in the month of January 1831, if I raise it, and if not, what I do raise and the rest in cash :—the second note for eighty-four dollars and interest, to be paid on the 5th day of November 1832 :— the third note for eighty-three dollars, and interest to be paid the 5th day of November 1833 :—the fourth note for eighty-three dollars and interest, to be paid on the 5th day of November 1834. Now in case the said Timothy Wetherbee, his heirs, executors, or administrators shall pay or cause to be paid each of said notes to the said Binney, his heirs, executors, or administrators, when the same becomes due, and in all things agreeable to the tenor of said notes, upon that condition the foregoing deed shall be void, otherwise be and remain in full force and virtue."

It appeared that previous to the 4th day of January 1831, sundry payments were made on the notes aforesaid, which reduced the amount then due to about the sum of $313 ;—that on that day said Wetherbee executed to Binney three new notes of that date for the balance aforesaid, all payable in wheat at one dollar per bushel, if he (Wetherbee) should raise it, and otherwise what he should raise, and the rest in cash. These notes were also on interest, and made payable in the month of January 1832, 1833 and 1834. On the receipt of these notes those described in the mortgage deed were given up to Wetherbee and cancelled. No payment of the new notes was shown. Soon

Windsor,
February,
1835.
Dana & Hayden
vs.
Binney &
Morrison.

after this exchange of the notes Wetherbee expressed his opinion to others, that the mortgage was thereby defeated ; said he understood it so at the time of doing the business, but did not suppose Binney had any such expectation.

The plaintiffs claimed by levy of an execution in their favor against Wetherbee, made after the execution of said new notes to Binney.

The county court received evidence showing the renewal or exchange of notes in the manner above stated, and the defendants obtained a verdict. To this the plaintiffs filed exceptions, and brought the cause into this court.

*E. Hutchinson for plaintiffs.*—There can be no doubt of plaintiffs' right to recover, unless done away by the evidence put in by defendants, which was objected to on trial, but admitted by the court.

The defendants then gave in evidence the mortgage deed, above referred to, and certain notes, every one of them varying in date, amount, and mode, and time of payment, from those described in the condition of the mortgage, accompanied with *parol proof*, by which they *offered* to show that the said Wetherbee *fraudulently* procured the mortgage notes given up in exchange for the notes offered, with a view to defeat the mortgage, but *without* offering to prove any knowledge in the plaintiffs of the fraud, if any there was. Defendants then introduced, as witnesses, one Slack and Sawyer, who testified to the admissions of Wetherbee, made before plaintiffs' boy, that *" he knew at the time, it would clear, or kill, the mortgage, but did not suppose Binney did."* Whereupon the court instructed the jury, if they believed the said Slack or Sawyer, to return a verdict for defendants—which they did in their seats.

Plaintiffs now contend, that the court erred in permitting said mortgage deed to go to the jury, without the production also of the notes, or at least one of them, upon which the mortgage is predicated ;—that *parol* evidence was inadmissible to reconcile the variance so apparent upon the face of them, between the notes described in the mortgage and those given in evidence; and, also, that the court erred in their decision as to the *effect* of that evidence, when heard, upon the cause.

It is difficult imagining upon what possible principle of law that testimony was admitted. There is a total variance between the notes admitted and those described in the mortgage, so that with-

Windsor,
February,
1835.

Dana & Hayden
vs.
Binney &
Morrison.

*out more* they would be pronounced inadmissible by every one, upon the ground.

In the case of *Edgell* vs. *Stanford*, 3 Vt. Rep. 202, which is a case between mortgagor and mortgagee, it is decided that in case of a variance between the note described in the mortgage and the one given in evidence, *parol proof is inadmissible* at law, to reconcile that variance by showing it to be in reality the same debt *intended* by the parties to be secured by the mortgage, but written differently by *mistake*, and that the party's only remedy is in chancery. That case is cited by the court in the case of *Marshall* vs. *Wood et al*, 5 Vt. Rep. 250, as fully settling the law upon that subject. It is also there decided, that no recovery can be had at law on a mortgage, without the production of the mortgage note on trial, as without its production the law presumes it cancelled and given up, and consequently the debt itself being extinguished, that the lien created upon the land for the security of that debt is gone with it; and that without regard to the title as it stands upon record:—unless, indeed, the absence of the note can be accounted for, as in other cases of loss properly substantiated, consistently with the idea of its being still due, when, perhaps, the rules of law, applicable to lost instruments, might apply. But when, as in the case of *Edgell* vs. *Stanford*, above cited, the instrument whatever may be its character or effect on the cause, is in existence and in the possession of the party relying upon it;—or, as in the present case, cancelled and given up under a new contract, the case cannotbe brought within the principle of *lost* instruments, so as to admit *parol proof of the contents.*

The same rule is established in chancery.—2 Aik. Rep. 33, *King* vs. *Harrington et al.*—2 Vt. Rep. 353, *Newell* vs. *Hurlburt et al.*

But defendants, on the trial below, relied upon the *fraud*, which they say was practiced by Wetherbee upon Binney in the contract by which the mortgaged notes were procured to be cancelled and given up to him in exchange for the new, as taking this case out of the principles above referred to. Suppose it to have been a fraud, and such an one as would vitiate a contract at law in a case where an adequate remedy exists at law. Binney then would have his election, as against Wetherbee, either to affirm or disaffirm the contract. If he affirm it, the old notes are dead, and the new, constituting the consideration paid for cancelling the old, are valid and their payment may be enforced at law. But the new notes do not support the mortgage, on the ground of variance.

Windsor,
*February*,
1835.

Dana & Hayden
*vs.*
Binney &
Morrison.

If he disaffirm it and would set up the old contract, treating the new notes as wholly void, and therefore no payment for the old, he is left with his mortgage, but no legal notes in existence to support it; and it presents rather an anomaly in judicial proceedings, that he should be permitted to give those *void notes* in evidence, as a substantive ground of recovery in his favor. I know of no relief which a court of law can give in such a case, but simply to pronounce the contract, sought to be enforced, void, as against the party defrauded thereby, if required. If from the circumstances of the case, merely pronouncing the contract void, does not furnish an adequate remedy to the party aggrieved, there is a power, and but one, which can set the matter right : that is a court of chancery. So that no difference in principle can be perceived, whether the variance is in consequence of *mistake* or *fraud*, as to the proper mode of relief. Both subjects are peculiarly within the province of courts of equity, and seldom can be remedied at law.

But let us carry the principle out a little further, and see the effects in point of practice of sustaining the admission of this evidence at law. There is a recovery in favor of mortgagee. Mortgagor or those holding under him, file a motion to redeem. How can a court of law ascertain the sums due in equity ? And when will the time of redemption be out ? It is perceptible in this case, that some new consideration in amount must have been included in the new notes. Slack testifies that 70 or 80 bushels of wheat were paid on the old notes while in his custody. By supposing that payment delayed until the very day of exchange of notes, and casting the interest to that time, the new notes contain, at least, nine or ten dollars more than the balance of the old, calling the payment the lowest sum testified to. There is also this difference in amount —the three last mortgage notes were for cash, and the new notes are for as many bushels of wheat (if he raised it) as there were dollars in in the old, (together with the addition above named) when wheat was fetching (as the case shows) from $1,25 to $1,50 per bushel. Again, these new notes were all made payable at different times from the old : the last new note falling due in January 1834, and the last of the mortgage notes not until November of the same year. Would the court go by the old notes, as described in the mortgage, or the new notes adduced in evidence ? If by the new notes, the record reciting the condition of the mortgage and the order of court thereon, would present rather a *novel* aspect, to say the least of it, with the times and amounts of payments, (with the accruing interest) differing every one of them from any talked about,

in the mortgage.   If the description in the condition of the mort-
gage is to govern, deducting the payments proved, what business
have the new notes in the case ?

But we deny that there was, *in law,* any fraud in the case.
The proof tends to show that Wetherbee *knew* that giving up the
notes "would kill the mortgage, but supposed Binney did not."
The case, however, finds that Binney was informed by Slack be-
fore he had given up the mortgage notes, but after the agreement
to make the exchange, "that he had missed it."   Still he gives
up the notes.   Sawyer's testimony also shows, that Binney asked
Wetherbee at the time of exchange to give a new mortgage, which
Wetherbee offered to do if he would make up to him a small sum
mentioned for a previous cheat in a horse trade ; but Binney de-
clined doing it.   From which circumstance it is by no means cer-
tain that Binney did not in fact understand what he was about as
well as Wetherbee, notwithstanding Wetherbee *thought* to the
contrary.   But suppose he did not.   Suppose that Wetherbee un-
derstood the *law* better than Binney and did not see fit to disclose
it to him.   Does that constitute in law a *fraud* ?   Every man is
bound and presumed to know the law.   The plea of ignorance
will not save a man's life—why should it his property ?

But suppose again, that instead of the pretended fraud resting
wholly upon a *concealment* of the *law,* there had been a direct and
false misrepresentation of some matter of *fact*, by reason of which
Binney was induced to give up his notes and destroy the mortgage :
as, for instance, that Wetherbee had represented that a certain in-
dividual named stood ready and would, upon seeing the mortgage
notes in his (Wetherbee's) possession cancelled, advance money
upon a new mortgage of the same premises, more than sufficient to
pay all that was due to Binney, and promised he would, immedi-
ately upon the reception of the money, come and take up the new
notes ; when in point of fact, the story was altogether a fabrication.
It is fully settled in the case of *Williams* vs. *Hicks,* 2 Vt. Rep.
36, that in case the distance was no greater than from Bennington
to Burlington, it would not be what the law can declare a fraud—
that it is "but the bare assertion of the party,"—"that the other
might easily have applied to the individual referred to and ascer-
tained the truth ; and if he did not, *it was his own folly* to dis-
pense with that which common prudence required he should have
done."

It is also fully settled that, in a sale, the *concealment* of any ma-

Windsor,
February,
1835.

Dana & Hayden
vs.
Binney &
Morrison.

terial fact under other circumstances is a fraud, yet, if equally within the reach of either party upon due diligence and enquiry, constitutes no fraud.    And even that an express warranty does not extend to visible defects.    So that, were this to be treated as a matter of *fact*, and not purely of *law*, Binney, upon application to any lawyer in the county, might have been informed of the decision above quoted, "that he could not recover on his mortgage without his notes."

If the innovation upon established principles, here asked for by defendants, shall be sanctioned and adopted by declaring a *superior knowledge* of the *law* in one party and a *concealment* of it from the other, such a *fraud* as to vitiate a contract, where would be the stopping place ?    Courts must then go on, making innovation upon innovation, until it comes to be decided that any *superior skill* in judging of the value of property contracted for in the one party, and a *concealment* of that skill from the other, is in law a *fraud* and defeats the purchase.

The law permits one who has been defrauded in the purchase of property to rescind the contract *in toto*, and recover back the purchase money in an action for money had and received.    And it is the same where the party makes anotherwise voluntary payment of money, under a mistake of the *facts*; yet, the authorities are full, that ignorance or mistake of the *law*, lays no foundation for a recovery.—2 Saun. Plead. and Ev. 215, 216 and 217.—2 East. Rep. 469, *Bilbie* vs. *Lumley et al.*—Doug. Rep. 468, *Lowry* vs. *Bourdieu.*—2 John. Rep. 164, *Elting et al* vs. *Scott and Seaman.*—12 East. Rep. 38, *Stevens* vs. *Lynch*, (the case from which the doctrine in *Wi'liams* vs. *Hicks* was taken.)—2 Stark. Ev. 111 and 112.

The remarks and the authorities cited, thus far, are applicable to the question as between mortgagor and mortgagee.    But there is a still further objection to the evidence admitted and the decision thereon in this case, growing out of the consideration that the question here arises between the mortgagee and an attaching creditor *without notice* of the fraud, if any fraud there was, as between the original parties.    We had supposed the rule settled, as well in equity as at law, that when both parties claim under the same person, (as one by deed, the other by levy,) that neither party's title can be affected by proof of fraud in the judgment debtor, without also showing the party, against whom it is urged, to have been *privy* to that fraud.    4 Vt. Rep. 412, *Edgell* vs. *Lowell et al.*—14 Mass. Rep. 250, *Bridge* vs. *Eggleston.*—2 Vt. Rep. 544, *Rublee* vs. *Mead.*

WINDSOR,
February,
1835.
Dana & Hayden
vs.
Binney &
Morrison

*Marsh and Williams for defendants.*—The defendant Binney, under whom the defendant Morrison holds, shows a mortgage deed of the premises, executed and recorded before the plaintiffs' levy from said Wetherbee to himself, dated November 5, 1829, conditioned for the payment of four notes therein described.

On the 4th of January 1831, the notes mentioned in the mortgage deed were partially paid and given up, and three other notes given for the balance, amounting to three hundred and thirteen dollars.

The mortgage at the time of the levy and subsequently to the present time remained in full force.

The first question is, whether this exchange of notes operates as a payment of those described in the deed and a defeasance of the mortgage, even theugh the transaction were a fair and *bona fide* one.

And secondly, whether, as the jury have found, under the charge of the court that the notes described in the mortgage were obtained by Wetherbee surreptitiously and fraudulently from Binney, the transaction still operates as a defeasance of the mortgage security.

It is contended that as the condition of the deed is that it shall be void on the payment of the notes therein described, nothing but actual payment can avoid the deed, and that partial payment and the renewal of the notes for the balance is not payment.

It is true the mortgagee, at any time, when the validity of the mortgage comes in question must either produce the notes described therein or account for their non-production ; but if accounted for otherwise than by actual payment the mortgage security is not impaired.    But in the case of *Edgell* vs. *Sanfords*, 3 Vt. Rep. 202, Royce, J. thought, and certainly for very satisfactory reasons, that the burden of showing payment of the note described in the mortgage lay on the mortgagor ; and the decision in that case is certainly one of very doubtful authority, and one which it is believed will be overruled when the same question arises.    And it is in that case admitted by the court the plaintiff may account for the non-production of the note, by showing that the debt has not been paid, and why producing the note intended by the parties to be secured by the mortgage, though differing a few dollars from the one described was not accounting for not producing the one described in the deed, is not readily perceived.

In *Dunham* vs. *Dey*, it is decided that "the repeated renewat of the notes which were evidence of the debt is to be regarded as an extenson of the credit, from time to time, but ought not to be

WINDSOR,
February,
1835.

Dana & Hayden
vs.
Binney &
Morrison.

deemed an extinguishment or a satisfaction of the original debt, for which the conveyance was given as security."—15 John. Rep. 555, 567.

In *Davis* vs. *Maynard*, it is decided that taking a recognizance on the note described in the mortgage and giving up the note, is not a discharge of the mortgage. The court say, not as in *Edgell* vs. *Stanford* that the mortgage and note are to be considered as one instrument, "the mortgage and note are two distinct securities, and nothing but payment of the debt will discharge the mortgage. This position is grounded on the words or condition of the mortgage, which always are that if the money be paid, then the note or bond as well as the deed shall be void, otherwise both remain in full force. By the terms of the contract nothing but payment is to avoid it."—9 Mass. 242, 247.

In *Shirras et al* vs. *Craig et al*, Marshall, Ch. J. in delivering the opinion of the court, remarks :

"It is true the real transaction does not appear on the face of the mortgage ; the deed purports to secure a debt of £30,000 sterling, to all the mortgagees. It was intended to secure different sums, due at the time to particular mortgagees, advances afterwards to be made, and liabilities to be incurred to an uncertain amount. It is always advisable fairly and plainly to state the truth. But if on investigation the real transaction shall appear to be fair though somewhat variant from that which is described, it would be unjust and unprecedented to deprive the person claiming under the deed of his real, equitable right, unless it be in favor of a person, who has been in fact injured and deceived by the misrepresentation."— 7 Cranch, 34, 50.—Peter's Cond. Rep. 407, 410.

But in the case at bar, it was shown at the trial and found by the jury, that the mortgagee obtained the notes described in the mortgage and substituted those which remain unpaid for the balance due surreptitiously and fradulently, with a view to defeat the mortgage security, taking advantage of the ignorance, simplicity and credulity of Binney, the mortgagee.

It will scarcely be contended that Wetherbee, or those claiming under him, can avail themselves of such an unfair transaction and triumph in his iniquity.

But it is said that the plaintiffs had no notice, or rather there was no proof that they had notice of the fraud of Wetherbee.

They had all the notice that the record of the deed could afford. and this is legal notice. Nothing appeared from the record but that the notes were all due, and that was sufficient to put them on

the inquiry. If they had inquired or did inquire they could scarcely have failed ascertaining the true situation of the business.

If there was a subsisting title in Binney, as between him and Wetherbee, they could only attach or levy on the equity of redemption.

If any creditor attach or levy execution on property, when there is of record a title apparently good in any other person than the debtor, he proceeds entirely at his own risk, he connot be deceived by the record.

If he go on the ground that the conveyance is fraudulent he must afterwards show it to be fraudulent.

If it be a mortgage, and he assumes that the personal security has been paid, he must abide the result of the actual state of things, and the rights of the parties, depending on such state of things.

But the presumption is that they had actual notice of the transaction, as it now appears. If they went to the record that surely furnished them no inducement to attach. There is no pretence that Wetherbee showed them the old notes, and thus induced them to levy. How, then, came they to levy their exeeution? Why, they had heard that the notes were taken up, and learning, as they must have learned, how they were obtained, (for the thing was not done in a corner) they then stepped in to avail themselves of the fraudulent conduct of Wetherbee, and may properly be regarded as standing in his place.

. The opinion of the court was delivered by

ROYCE, J.—It is questionable whether the conduct of Wetherbee was fraudulent in a legal sense, and if it was so, the plaintiffs are not shown to have been privy to the fraud. Consequently, that part of the case which relates to the alledged fraud of Wetherbee is not material, except as it goes to show the consideration of the new notes, that the original debt was not satisfied, and that Binney had no intention to relinquish or affect his lien on the land. The only important question is, upon the effect of exchanging the notes in the manner stated, without a corresponding alteration in the mortgage security.

This mortgage was conditioned for the payment of four promissory notes correctly described in the condition, and those notes were afterwards given up and cancelled, in exchange for other notes which remain unpaid. Should the second set of notes be deemed a payment of the first, so as to satisfy the condition of the deed? As this stipulated, for effect, in the payment of the debt

WINDSOR,
February,
1835.
Dana & Hayden
vs.
Binney &
Morrison.

evidenced by the first notes, no satisfaction of those notes should be recognized as a performance of the condition, which was not at the same time a payment of that debt. In the case of *Hutchins* vs. *Alcott*, 4 Vt. Rep. 549, it was decided, that a promissory note taken for a previous book account, and receipted as in full of the account, was *prima facie* a payment. And a note taken under like circumstances, or with equal evidence of its intended effect, would probably be regarded as payment of any debt by mere simple contract. In the present case there was only a substitution of new notes for those described in the mortgage, without any other evidence of an intent to extinguish the previous debt, than what necessarily arose from the mere act of substitution. That was sufficient to defeat a remedy on the prior notes themselves, because they were cancelled ; but it should be available to no other purpose, without further proof of an agreement or understanding on the subject. Hence we conclude, that as between Binney and Wetherbee the condition of the morgage deed has not been substantially fulfilled.

It is contended, however, that there would be a difficulty in the evidence, and that according to *Edgell* vs. *Sanford*, 3 Vt. Rep. 202, the new notes could not be received, even as against Wetherbee, to show the original debt still subsisting. They certainly could not, without evidence to connect them with the former notes, evidence of the substitution. The difficulty in the case cited was, that the party never had a note corresponding with the condition of the mortgage deed ; it was merely a question of variance. Consistently with that decision the plaintiff might have exhibited a judgment, or some other form of a debt, with evidence showing it founded on the note described in the mortgage ; and the second set of notes were equally admissible here, with proof of their substitution for those described in the mortgage. It must be admitted that this doctrine is capable of being pressed too far, and that difficulties may sometimes occur in fixing proper limits to its application ; since we may readily imagine such a substitution of new parties, and such an intermixture of new considerations, as would render the application of the principle alike impracticable and unjust. But the present case is attended with no such embarrasments.

Such is our view of the case as between the original parties, and we do not perceive that it admits a different consideration in reference to these plaintiffs. The record of the mortgage deed, without any satisfaction appearing of record, was evidence to other creditors, of Binney's incumbrance. In proceeding against the

mortgaged premises, they would necessarily encounter the risk of being obliged to show some extinguisement of that title. These creditors have failed to show what can be regarded as such, between the mortgagee and their debtor. Having notice of the mortgage, they were bound to make all reasonable inquiry as to any payments or satisfaction of it. And if in the end they should have a fair ground to believe it paid or discharged; in other words, if they should appear to have been misled by what happened between the mortgagee and mortgagor, and thus induced to levy on the land, the mortgage ought not to stand in their way. But the case discloses nothing to warrant such an inference in favor of the plaintiffs. The course they took is rather to be regarded as an experiment to save a doubtful or desperate debt, and not the result of any misapprehension as to facts.

Windsor,<br>February,<br>1835.<br>Dana & Hayden<br>vs.<br>Binney &<br>Morrison.

Judgment of the county court affirmed.