## LADD *v.* WIGGIN.

The return of the levy of an execution upon real estate is conclusive against all the world as evidence that thereby, as between the parties, the title of the debtor in the estate levied upon passed to the judgment creditor.

Evidence to contradict the levy, as effectual between the parties to pass the title of the debtor in the property levied upon, will not be received.

A conveyance of real estate, absolute in its terms, but made for the purpose of securing a debt, with an agreement or understanding between the parties that the land is to be reconveyed upon payment of the debt and interest, is fraudulent and voidable, not only against existing creditors of the grantor, but against those who may have become such after its execution.

Nothing but payment in fact of the debt, or a release by the mortgagee, will discharge a mortgage, where equity requires its continued existence.

A subsequent security for a debt, of equal degree with a former, for the same debt, will not, by operation of law, extinguish it.

Where the note, secured by a valid preëxisting mortgage, is given up to the mortgagor, upon the execution by him to the mortgagee of a fraudulent conveyance of the premises, and the amount thereof included in the debt intended to be secured by the fraudulent conveyance, the original mortgage is not thereby extinguished or discharged; but when the fraudulent conveyance is avoided by the creditors of the mortgagor, the mortgagee is remitted to his previously existing legal rights under the mortgage.

The avoiding of the fraudulent conveyance in such case prevents the purchaser from taking any thing by his fraudulent contract, and permits the creditors to take all their debtor fraudulently conveyed, and nothing more.

The defence of usury is personal; and as against a subsequent purchaser only the amount of illegal interest is to be deducted from the amount due upon a mortgage.

Upon the decease of an intestate, and the granting of administration, his personal estate, and all contingent as well as absolute interests therein, vest in his administrator, and he may assign a chose in action by a proper instrument for that purpose, without license. A mortgage is a mere incident of the debt, assignable in the same way as the debt itself.

WRIT OF ENTRY, to recover possession of a tract of land in Laconia, in this county.

Plea, as to thirteen hundred and fifty-nine fifteen hundredths undivided parts of the premises demanded, *non tenure*, and as to the remaining one hundred and forty-one fifteen hundredths, *nul disseizin* and issue thereon, and *nil dicitur* as to the *non tenure*.

It appeared in evidence that on the 1st of October, 1852,

Newell Tilton, being seized of the demanded premises in fee, executed a mortgage thereof to one Daniel G. Ladd, to secure the payment of a promissory note of that date for $350, given by Tilton to Ladd. The consideration of the note was a loan of $339.50, then made by Ladd to Tilton, under an agreement to pay nine per cent. interest therefor, and the note was made for more than the amount loaned by $10.50, in order to secure three per cent. beyond the legal rate of interest for one year. On the 1st day of November, 1853, Tilton, being indebted to said Ladd in the sum of about $250, due upon other promissory notes, in addition to the amount due upon the mortgage note, and also being indebted to the defendant, and by reason of these and other debts being in embarrassed circumstances, executed to said Ladd an absolute deed of the demanded premises, and at the same time Ladd gave up to said Tilton the mortgage and mortgage note, and other notes held by Ladd against Tilton, and also advanced to him a further sum of about $420. It was contended by the defendant that this deed was fraudulent as to the creditors of Tilton, and evidence was introduced tending to show that it was given as security for the debts due from Tilton to Ladd and the money so advanced, and that it was agreed between them, at the execution of the deed, that Ladd should re-convey to Tilton, or to any other person, for his benefit, whenever the amount of the notes so given up and the money so advanced should be repaid to Ladd, with interest thereon, at the rate of nine per cent. per annum. Immediately after the execution of the deed, the defendant caused the demanded premises to be attached in a suit brought by him for the recovery of his debt against Tilton; and having recovered judgment therein, caused his execution, which issued thereon, to be extended upon one hundred and forty-one fifteen hundredths undivided parts of the demanded premises as the estate of Tilton.

Daniel G. Ladd died on the 24th of August, 1855, intestate, leaving the demandant, his only child, and Lydia R. Ladd, his widow, who was duly appointed administratrix upon his estate. Prior to the commencement of this suit, the said Lydia, as ad-

Ladd *v.* Wiggin.

ministratrix, executed and delivered to the demandant an instrument, of which the following is a copy :

*Know all Men by these Presents,* That I, Lydia R. Ladd, of Gilmanton, in the county of Belknap and State of New-Hampshire, administratrix of Daniel G. Ladd, late of said Gilmanton, deceased, in consideration of three hundred and seventy-five dollars to me in hand, paid by Marietta P. Ladd, of said Gilmanton, do hereby grant and assign to said Marietta P. Ladd a certain mortgage made to said Daniel G. Ladd by Newell Tilton, then of Meredith, in said county, dated the first day of October, A. D. 1852, and recorded in the Belknap Registry, book 20, page 40, together with the debt thereby secured, and all my right to the premises thereby conveyed.

Witness my hand and seal, the 21st day of March, A. D. 1856.                                    LYDIA R. LADD, [L.S.]
*Administratrix of Daniel G. Ladd, deceased.*

Signed, sealed and delivered in presence of
H. A. SPEAR,
JOHN L. PERLEY.

BELKNAP SS., March 21, 1856.   Personally appeared Lydia R. Ladd, and acknowledged this instrument, by her signed, to be her free act and deed.   Before me,

JOHN L. PERLEY.

The plaintiff offered evidence tending to show that at the time when the extent of the defendant's execution was commenced and completed, the demanded premises were in the possession of a third person, occupying the same as tenant of the demandant, and that no actual possession of the one hundred and forty-one fifteen hundredths parts set off was given by the officer making the extent to the defendant, and that the defendant subsequently obtained possession of the premises by collusion with the tenant, to which the defendant objected, and it was ruled out by the court.   The said execution and the return of the officer thereon may be referred to by either party as a part of this case.   The

court instructed the jury that if they should find that the deed of the 1st of November, 1853, from Tilton to Ladd, was given upon a secret understanding and agreement between them that it was taken by Ladd as security for the indebtedness of Tilton to him, and for the money then advanced, and that it was a part of the contract that the land should be re-conveyed to Tilton, or to any other person for his benefit, upon the payment of the amount of his indebtedness to Ladd, this would render it void in law as to the defendant, he being a creditor of Tilton at the time of the execution and delivering of the deed; and that if the jury should find the deed to be thus void, and they should also find that the mortgage and mortgage note of $350 were given up to Tilton in consideration of his executing and delivering the deed of the 1st of November, the said Ladd, if living, would nevertheless have a legal claim to the premises under the mortgage, and that by virtue of the assignment from the administratrix of Ladd, the title, under the mortgage, passed to the plaintiff, and would entitle her to maintain this action, and to recover a conditional judgment thereon for the amount of the mortgage note, the sum of $10.50, included in the principal on account of illegal interest, being first deducted therefrom. The jury were further instructed to return a general verdict for the plaintiff, if they found that the deed of the 1st of November was not fraudulent as to creditors; otherwise to return a verdict that the plaintiff was entitled to a conditional judgment for such sum as they might find to be due upon the $350 note, after making said deduction. The jury found that the plaintiff was entitled to a conditional judgment for the sum of $426.76. The defendant excepted to the foregoing instructions of the court, and moves that the verdict be set aside on account thereof. The plaintiff moves that the verdict be set aside on account of the ruling of the court in rejecting the evidence offered.

*Stevens,* for the plaintiff.

*Spear,* for the defendant.

Ladd v. Wiggin.

FOWLER, J. The levy of the defendant's execution vested in him an actual seizin of the land levied upon, as against Newell Tilton and all persons claiming under him by title subsequent to the defendant's attachment. All the title of Tilton in the premises levied upon, as between the parties, passed to the defendant by the levy. Upon this point the officer's return was conclusive and not to be contradicted by any one. *Brown* v. *Davis,* 9 N. H. 78; *Parker* v. *Guillow,* 10 N. H. 103; *Angier* v. *Ash,* 6 Foster 105, and authorities; *Swift* v. *Cobb,* 10 Vt. 282; *Gore* v. *Brazier,* 3 Mass. 523; *Blood* v. *Wood,* 1 Metcalf 528, 534; *Gorham* v. *Blazo,* 2 Greenleaf 232; *Langdon* v. *Potter,* 3 Mass. 215; *Proctor* v. *Newhall,* 17 Mass. 81; *Bott* v. *Burnell,* 9 Mass. 98.

As against Newell Tilton and his privies, the levy gave the defendant a vested and perfect title, dependent on the officer's return, and no evidence could be raised to impeach or destroy the validity of the return for the purpose of establishing that title. The only purpose for which the execution and return were offered in evidence by the defendant, was to sustain his title to one hundred and forty-one fifteen hundredths of the premises demanded by the plaintiff in his writ. He alleged that by the levy he had acquired Tilton's interest in that share of the premises, and, as his creditor, was entitled to hold the same against the fraudulent conveyance thereof to the father of the plaintiff.

Under the circumstances of the case, the only legitimate purpose for which the evidence offered by the plaintiff and rejected by the court could have been proposed, was to defeat the defendant's title against Newell Tilton through the levy, and thus show that he was in no situation to contest the plaintiff's claim to the premises in controversy. In other words, its object was to show that the defendant's levy was invalid as against Newell Tilton. But, on that point, the return was conclusive against all the world, and could not be contradicted. The evidence was therefore properly rejected. *Dickinson* v. *Lovell,* 35 N. H. 9; *Estabrook* v. *Hapgood,* 10 Mass. 313; *Bott* v. *Burnell,* 9 Mass. 98; 15 Mass. 232; 17 Mass. 591.

The conveyance of November 1, 1853, absolute in its terms, but made for the purpose of recovering a debt, with an under-standing between the parties that the land was to be reconveyed upon payment of the debt and nine per cent. interest, as found by the jury, was void ; that is, voidable not only against existing creditors, but against those who might have become such after its execution. *Smith* v. *Lovell*, 6 N. H. 67 ; *Paul* v. *Crocker*, 8 N. H. 288 ; *Tifft* v. *Walker*, 10 N. H. 150 ; *Smith* v. *Smith*, 11 N. H. 460.

The jury have also found that the $350 mortgage and note were delivered up by Ladd to Tilton, in consideration of the ex-ecution of the deed of November 1, 1853. Did such surrender, for such consideration, operate to extinguish the mortgage debt and release the mortgage as between the parties, or as against the creditors of Tilton ?

It is well settled that nothing but payment in fact of the debt, or a release by the mortgagee, will discharge a mortgage. *Cros-by* v. *Chase*, 5 Shepley 369 ; *Elliot* v. *Sleeper*, 2 N. H. 525 ; *Willard* v. *Harvey & al.*, 5 N. H. 252 ; *Pool* v. *Hathaway*, 9 Shepley 85 ; 9 Mass. 242 ; 16 Pick. 225 ; 7 Vt. 493.

And it is equally well settled, that the taking of a second col-lateral security for the same debt upon the same property, even of a higher nature, does not extinguish or discharge the first. *Gregory* v. *Thomas*, 20 Wendell 17 ; *Burdett* v. *Clay*, 8 B. Monroe 287 ; *Day* v. *Neal*, 14 Johns. 404.

Adjudications for several centuries, of cases of every variety of form, establish the proposition, that a subsequent security for a debt, of equal degree with a former for the same debt, will not, by operation of law, extinguish it. *Manhood* v. *Crick*, Cro. Eliz. 716 ; *Norwood* v. *Gripe*, Cro. Eliz. 727 ; *Maynard* v. *Crick*, Cro. Charles 86 ; *Erie's Case*, Lit. Rep. 58 ; *Higgins' Case*, 6 Coke 45 ; *Rhoades* v. *Barnes*, 1 Burr. 9 ; *Philips* v. *Johnson*, 8 Johns. 54, 58 ; *Preston* v. *Preston*, Cro. Eliz. 817 ; *Mumford* v. *Stocker*, 1 Cowen 178 ; *Andrews* v. *Smith*, 9 Wendell 53.

When the securities are of equal degree, they shall be intend-ed and held to be distinct and independent, although both are

Ladd *v.* Wiggin.

liens upon property. A debt is not honestly extinguished until it is paid in cash or its equivalent, and to multiply artificial mergers will not further the cause of fair dealing. *Higgins' Case,* 6 Coke 45 ; *Andrews* v. *Smith,* 20 Wendell 17.

To make the second security an extinguishment or discharge of the first, there must be an express release, or at least an implied release from a covenant not to sue. *Phelps* v. *Jackson,* 8 Johns. 58.

It is true that where the estate of the mortgager and mortgagee become united in the same person, *primâ facie,* the mortgage debt is extinguished. *Greenough* v. *Rolfe & al.,* 4 N. H. 363, and authorities. And the delivery of the note by the mortgagee to the mortgager, is *primâ facie* evidence that the mortgage was discharged. *Smith* v. *Smith,* 15 N. H. 55 ; *Johnson* v. *Nations,* 26 Miss. 147. And where the mortgagee purchases the mortgaged premises and receives a deed in fee simple, paying a part of the consideration by the delivery of the note which the mortgage was given to secure, the mortgage is thereby *primâ facie,* paid and extinguished. *Jennings' lessee* v. *Wood,* 20 Ohio 261.

But all these inferences and conclusions of law and of fact are open to explanation, and may be rebutted and controlled by evidence. And we think they must be considered to have been explained, rebutted and controlled by the evidence in the present case. The instructions of the court to the jury must be regarded as having been, in substance, that if they found that the $350 note and mortgage were given up otherwise than in consideration of the new deed, absolute upon its face, but accompanied by a secret trust, rendering it as between the parties a conditional rule or equitable mortgage, they must find a verdict for the defendant. And, under the constructions, a verdict for the plaintiff for a conditional judgment for the amount of the mortgage debt, less the illegal interest included therein, must be considered as establishing the fact that the mortgage debt was not extinguished or the mortgage released by the transactions of November 1, 1853, but that the debt was simply included in and

re-secured by the fraudulent deed of that date; that the note, constituting the original evidence of its existence, was given up with the express understanding that it was not paid and extinguished, but united with the $420 then advanced and the $250 due upon other notes, and remained secured by the new lien on the same land. The new security having failed, the mortgagee was at liberty to fall back upon the original mortgage for the security of his debt. As between the parties, after the verdict rendered under the instructions, the whole final transaction in relation to the original debt and mortgage, may be regarded as having existed only in contract, and that contract having been pronounced void as to creditors, and been avoided by them, the debt and mortgage continue in full force and validity. The agreement between the parties may be taken to have been, that if Tilton redeemed the property from the deed of November 1, 1853, which was to be done only by the payment, among other debts, of the original $350 mortgage debt, the first mortgage was to be released, otherwise not. This agreement proving ineffectual, as fraudulent and void, the mortgagee was in no worse situation than if it had never been made, but was at once remitted to his previous rights.

The general rule of law, as between parties, is, that where a contract is avoided for any cause, each is restored to his previously existing rights. They are placed back in their original position. Thus, a person who has been defrauded in a contract, returns what he has received, and rescinds the contract, and may then maintain an action to recover what he parted with, if it be not restored to him on demand. The infant, by avoiding his deed, rescinds the whole contract. So, where a party avoids a usurious contract, the opposite party is restored to his previous legal rights, and may recover any legal claim previously existing, although it may have been mingled in the usurious contract, and to have been canceled. *Cook* v. *Gilman*, 34 N. H. 556; *Bigelow* v. *Kenney*, 3 Vt. 353; *Edgell* v. *Stanford*, 6 Vt. 551.

In the case before us, the statute makes the absolute convey-

Ladd *v.* Wiggin.

ance void ; that is to say, voidable at the election of the grantor's creditors. When those creditors avoid this absolute conveyance, the law remits and restores the other party to his previously existing legal rights. This gives the statute its proper and legitimate effect, permits the purchaser to hold nothing by his fraudulent contract, and the creditors to take all their debtor fraudulently conveyed, and nothing more. To give it any other construction, would be to create penalties beyond those contemplated by its enactment, and compel the fraudulent purchaser to surrender, not only all he may have fraudulently purchased, but his previously acquired *bonâ fide* securities on the property.

The presumption of payment was rebutted by the finding of the jury. The note was given up upon the taking of the fraudulent conveyance, and the debt included in that conveyance which the creditors have now avoided. The very avoiding of the fraudulent conveyance revived and renewed the former valid lien; restored the parties to their original position. *Marshall* v. *Wood*, 5 Vt. 256 ; *Irish* v. *Morse & al.*, 10 Vt. 81 ; *Hoyt* v. *Demon*, 5 Day 479 ; *Towle* v. *Hoit*, 14 N. H. 61 ; *Haven* v. *Low*, 2 N. H. 13.

No objection has been urged to the instructions of the court below as to the effect or amount of deduction for the illegal interest included in the mortgage note, and we are not aware that any could properly be taken to them. The defence of usury is personal, and as against a subsequent purchaser, only the amount of illegal interest is to be deducted from the conditional judgment for the amount due on a mortgage. *Reading* v. *Weston*, 7 Conn. 413 ; *DeWolf* v. *Johnson*, 10 Wheaton 367, 393 ; *Post* v. *Bank of Utica*, 7 Hill. 391.

The mortgage debt, less the illegal interest included in the note, then, subsisting at the death of Daniel G. Ladd, was a chose in action, which, on well established principles, his administratrix could assign and transfer by a proper instrument for that purpose, without license. The mortgage was a mere incident of the debt, assignable in the same way. *Glass* v. *Ellison*,

9 N. H. 69; *Southerin* v. *Mendum*, 5 N. H. 420; *Ellison* v. *Daniels*, 11 N. H. 274.

Upon the decease of an intestate and the granting of administration, his personal estate, and all contingent as well as absolute interests therein, vest in his administrator, including his bonds, contracts and choses in action, as well as his goods and chattels, and can be diverted only by operation of law, or some act of the administrator. *Com. Dig.*, Admr., B., 10–13; *Dawes* v. *Boylston*, 9 Mass. 352; *Clapp* v. *Stoughton*, 10 Pick. 468; *Jewett* v. *Smith*, 12 Mass. 309; *Goodwin* v. *Jones*, 3 Mass. 514; *Hayes* v. *Jackson*, 6 Mass. 149; *Johns* v. *Johns*, 1 M'Cord 132; 3 M'Cord 371.

As the rulings and instructions upon the trial were correct, there must be, *Judgment on the verdict.*