### W. T. MORRIS ET AL. V. ALFORD H. PERSING.

FILED MARCH 8, 1906. No. 14,163.

1. **Chattel Mortgage:** SALE BY MORTGAGOR. The making of a written contract by a mortgagor of chattels in possession, providing for the sale and future disposition of the property, and providing for the payment or satisfaction of the mortgage indebtedness, is neither *malum in se* nor *malum prohibitum*.

2. **Instructions:** REVIEW. The giving of instructions set out in the opinion *held* error.

ERROR to the district court for Merrick county: JAMES G. REEDER, JUDGE. *Reversed.*

*Patterson & Patterson,* for plaintiffs in error.

*W. T. Thompson* and *George W. Ayres, contra.*

EPPERSON, C.

Plaintiff sued the defendants in the district court for Merrick county to recover $200, which sum was advanced by plaintiff to defendants as part of the purchase price of certain property described in their written contract. The contract was made October 24, 1903, and provided: "The said W. T. Morris and C. A. Burke have sold and agree to convey by bill of sale on the first day of January, 1904, their meat market and butcher business in Central City, Nebraska, including all fixtures therein," etc. It also contained the following provisions: "A. II. Persing agrees to purchase said business and articles and to pay therefor the sum of $900 as follows, to wit, $200 cash, receipt of which is hereby acknowledged, and shall further have the option of paying said balance of $700 in cash on the first day of January, 1904, or to pay $200 cash on said date and assume an indebtedness of $500 now existing against said business and articles; the said W. T. Morris and C. A. Burke to retain possession of and conduct said business until the first day of January, 1904."

The indebtedness referred to consisted of a certain chattel mortgage held by one Wright, securing a note given by defendants for $500, payable "on or before July 1, 1904." The mortgage had not then been filed of record, but plaintiff had knowledge thereof. He sought to rescind his contract on the grounds that the defendants did not have the consent of the mortgagee to such sale; and alleges that he did not know on the date of contract that the mortgagee had authority to take immediate possession of the property upon a disposition thereof by mortgagors. The trial in the lower court resulted in a verdict and judgment for the plaintiff and defendants bring the cause to this court by proceedings in error.

It is shown by the evidence that subsequent to the date of the contract, and before January 1, 1904, plaintiff requested the mortgagee to release the defendants from said indebtedness, and to accept plaintiff therefor, and that the mortgagee refused. The evidence further shows that on December 31, 1903, the plaintiff and defendants invoiced the stock of meat preparatory to the delivery thereof to the plaintiff; and that the plaintiff made no further attempt to comply with the terms of the contract. These facts are uncontradicted. It also appears that the mortgagee had not, on January 1, 1904, given his written consent to the sale of the mortgaged property. Plaintiff testified that before January 1, 1904, he saw the defendant Morris, and told him that the mortgagee refused to take him, and defendant replied that he did not know what he would do if the mortgagee did not accept him. This is denied by the defendant Morris. No other evidence was given to prove that plaintiff notified the defendants of his election to pay the $200 and to assume the mortgage indebtedness. It will be observed that the contract did not provide that in case plaintiff elected to assume the mortgage a release of the defendants from such indebtedness must be procured. There is a great difference between the assuming by a third party of an indebtedness and a novation. In the former, the liability of the original

9

obligor to the obligee remains unchanged, in the latter, the original obligor is relieved. The option might have been exercised by plaintiff's assuming the mortgage debt; instead of this he attempted to bring about a novation, which was not required. The mortgagee simply refused to release the defendants. He was not asked to do more.

The court gave to the jury the following instruction: "If in this case you find that the plaintiff did, in good faith, exercise said option and elect to pay $200 cash and assume an incumbrance of $500, and you further find that the owner of the incumbrance on said property refused to permit the plaintiff to exercise his said option above mentioned, then you are instructed that plaintiff will have the right to rescind said contract and recover from the defendants the money paid thereon." This instruction was not justified by the evidence.

The court further instructed the jury, in substance, that it was the duty of the defendants to procure the consent in writing of the mortgagee to the making of the sale contemplated in the contract on or before January 1, 1904, and that in the absence of such consent defendants had no right to make such sale, and could not retain the said sum of $200. Section 9, ch. 12, Comp. St. 1905, prohibits the actual sale and disposition of mortgaged property without the written consent of the owner and holder of the debt thereby secured, but it does not prohibit the mortgagor from contracting for the future disposition of the mortgaged chattels. And the making of a written contract, wherein the mortgagor agrees to sell and deliver the mortgaged chattels at a future time, and in which the mortgage is contemplated and the payment or satisfaction thereof provided, is neither *malum in se* nor *malum prohibitum*. Under the terms of this contract, the plaintiff obligated himself to exercise one of two options therein expressed, and it was his duty at the time fixed by the contract to notify the defendants of his election, and demand of them the execution of the contract on their part. Then, and not until then, upon their failure to deliver to

him a legal and effective bill of sale which would enable him to enjoy the fruits of his contract, could he demand a rescission.

The giving of each of the above instructions was error, and we therefore recommend that the judgment of the district court be reversed and the cause remanded to the district court for a new trial.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause is remanded for a new trial.

REVERSED.