[L. A. No. 8152.   In Bank.—January 25, 1929.]

C. W. NOYES, Trustee, etc., Respondent, v. BANK OF ITALY (a Corporation), Appellant.

Ward, Ward & Ward and Haas & Dunnigan for Appellant.

Morris Binnard for Respondent.

THE COURT.—This is an appeal from a judgment on a verdict in favor of the plaintiff for the sum of $10,000 in an action for conversion.

The facts essential to a proper disposition of the appeal are undisputed. Paul Petrich, plaintiff's bankrupt, conducted a wholesale and retail fresh fish and fish canning business at San Diego under the name of Coronado Fish Company. On August 10, 1923, an involuntary petition in bankruptcy was filed against him by his creditors. He was adjudicated a bankrupt and on October 22, 1923, the plaintiff was appointed the trustee of the bankrupt's estate. On November 3, 1923, as such trustee, the plaintiff demanded possession of the property described in the complaint. Upon a refusal of the defendant to surrender the same this action was brought.

During the canning season of 1921 and 1922 the defendant advanced to Petrich about $22,000 with which to conduct his business. On March 23, 1923, there remained due to the defendant the sum of $8,705.65, on which day the defendant obtained from Petrich a promissory note for the unpaid balance and a chattel mortgage securing the same covering the personal property involved in this action. This chattel mortgage was filed for record on March 26, 1923, but it lacked

the formality of an acknowledgment as required by section 2957 of the Civil Code. On July 28, 1923, the defendant took possession of said personal property assuming to act under the terms of said chattel mortgage. Thereafter, on August 28, 1923, the defendant caused a sale to be conducted as provided by law for the sale of mortgaged chattels, as a pledge, at which sale the personal property was bought in by the defendant for the sum of $3,000, there being no other substantial bids. In the trial court the defendant sought, and now seeks, to justify the taking, retention and sale of said personal property by reason of the terms of said chattel mortgage. To that end the defendant, under appropriate allegations in its answer, offered said chattel mortgage in evidence, to which offer the plaintiff objected on the ground that said mortgage was void as to the bankrupt's creditors whom the plaintiff represented, and therefore inadmissible in evidence against him as trustee. The court excluded the proffered mortgage, sustained the objection and instructed the jury that there was no issue under the proof on the question of conversion and that the only question for the determination of the jury was the value of the property converted. The pivotal point in the case is whether the trial court committed error in so instructing the jury, for it is conceded by the plaintiff that if the court committed error in this respect the judgment should be reversed. It is insisted by him, however, that the ruling of the court in excluding the chattel mortgage was proper under the provisions of section 2957 of the Civil Code and decisions of this court interpreting the same and that since there was therefore no evidence in the record justifying the withholding and sale of said personal property by the defendant, the instruction was proper.

We think the position of the plaintiff is well taken. Section 2957 of the Civil Code provides: "A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value, unless: . . . 2. It is acknowledged or proved, certified and recorded in like manner as grants of real property." It is a conceded fact in this case that said chattel mortgage was not acknowledged as required by the code section and was void to the extent therein provided. As applied to the facts in the present case, the said mortgage

under the plain intent of the statute was "void as against creditors of the mortgagor," Petrich, and must be so declared unless some one of the considerations urged by the defendant would require a contrary conclusion.

It is conceded by the parties that no question is involved herein as to whether the chattel mortgage or the act of the defendant in taking possession of the property created a voidable preference under the Bankruptcy Act. Nor is it claimed by the defendant that the evidence is insufficient to sustain the verdict fixing the value of the property at the sum of $10,000. It is insisted, however, that it was not shown that any of the creditors of the bankrupt were in position to attack the mortgage in that it did not appear that any of them were creditors who had acquired a lien upon the mortgaged property by virtue of some legal proceeding or who had come armed with some process authorizing seizure of the property and that a mere creditor at large may not attack the mortgage. It is urged that the case of *Loosemore* v. *Baker,* 175 Cal. 420 [166 Pac. 26], citing *Ruggles* v. *Cannedy,* 127 Cal. 290 [46 L. R. A. 371, 53 Pac. 911, 59 Pac. 827], is directly in point and is controlling here. We think a sufficient answer to the contention lies in the fact that whatever the status of the creditors may be in this case, the Bankruptcy Act has supplied the deficiency which the defendant claims to have existed and has vested the trustee in bankruptcy with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied. Section 47 (a) 2 of the Bankruptcy Act, June 25, 1910 (chap. 412, sec. 8, 36 Stats. at Large, 838, 840; Comp. Stats. 1913, secs. 9586, 9631; U. S. Code [U. S. C. A.], title 11, sec. 75), provides: "And such trustees as to all property in the custody, or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied."

Interpreting said section 47 (a) 2 of the Bankruptcy Act the supreme court of the United States has held that the trustee acquired a lien status as of the time when the petition

in bankruptcy was filed. (*Bailey* v. *Baker Ice Machine Co.,* 239 U. S. 268 [60 L. Ed. 275, 36 Sup. Ct. Rep. 50]; see, also, *Martin* v. *Commercial National Bank,* 245 U. S. 513 [62 L. Ed. 41, 38 Sup. Ct. Rep. 176, see, also, Rose's U. S. Notes]; 4 Cal. Jur., pp. 59, 60, 62, 63, and cases cited.)

Even if it be assumed that a mortgage void as to creditors pursuant to the plain terms of the statute could be transformed into a valid mortgage by the mortgagee seizing the mortgaged property or by otherwise taking possession of the same with the consent of the mortgagor and thus shut out general creditors or creditors not possessing a lien or armed with process, yet we are satisfied that it was the intention of the Bankruptcy Act to safeguard the rights of such general creditors by giving the trustee the status of a lien creditor and also to prevent the mortgagee from defeating the rights of the creditors of the bankrupt by contending that such creditors were general creditors only. It seems reasonable to conclude, also, that the purpose of the Bankruptcy Act in vesting power in the trustee to attack a chattel mortgage void under the statute was to render ineffectual as to creditors the act of the mortgagee in taking possession of the property before the commencement of the bankruptcy proceedings. In other words, the trustee was intended to be placed in the position of a lien creditor who would, but for the bankruptcy proceeding, be entitled to attack the alleged void mortgage and to enable him to protect the interests of general creditors against invalid liens, unlawful transfers, etc. (1 Collier on Bankruptcy, 12th ed., p. 728 et seq.)

Therefore, since it was competent for the plaintiff to commence the present action for conversion and since the proffered chattel mortgage was void as to creditors under the statute there was no error in excluding the mortgage and as matter of law instructing the jury that there was no issue for the jury to determine on the question of conversion.

It is next contended by the defendant that the court erred in refusing to instruct the jury that the verdict should be limited to the amount of the claims which arose from credit being extended to Petrich after the mortgage was executed. The schedule of claims shows that some of the claims arose prior to the execution of the mortgage. The position of the defendant in this connection is stated by its counsel as follows: "But, conceding for the purpose of this

argument, that the trustee does stand in a position to challenge this mortgage; i. e., conceding that general creditors, without first having obtained a lien on the chattels, can attack and question the validity of this mortgage, nevertheless, it is our contention that the mortgage would be void, if at all, only as to creditors whose claims arose after the mortgage was given and before possession was taken. For that reason, if for no other reason, appellant should have been permitted by the trial court to introduce in evidence the mortgage and the proceedings thereunder." Counsel then call attention to the fact that in *Ruggles* v. *Cannedy, supra,* at page 299 of 127 Cal. [53 Pac. 915], the court left this question open in the following language: "Whether it [the chattel mortgage] is void against a creditor who extended credit before the making of the mortgage does not here call for a decision." Also that in the case of *Loosemore* v. *Baker, supra,* the point was not decided, and the inference is drawn that the question is an open one in this state. But such is not really the case. Commenting on the scope of the term "creditors" as used in section 2957 of the Civil Code, this court said in *Cardenas* v. *Miller,* 108 Cal. 250, at page 258 [49 Am. St. Rep. 84, 39 Pac. 783, 785]: "The term *creditors* is general and applies to creditors existing prior to the mortgage, as well as subsequent." In *Old Settlers Investment Co.* v. *White,* 158 Cal. 236 [110 Pac. 922], the question of the application of section 2973 of the Civil Code to a prior creditor was involved. The sheriff, representing a prior creditor, levied an execution and had judgment in the trial court. Although the case was reversed for other reasons, it was stated that a creditor who became such prior to the execution of the void mortgage necessarily parted with consideration without notice of the mortgage and could cause a levy on the personal property involved without paying the mortgage debt. In the *Matter of Hansen,* 268 Fed. 904, the district court of the United States, in and for the southern district of California, in a bankruptcy proceeding involving the question of the validity of a chattel mortgage, noted that in the case of *Ruggles* v. *Cannedy, supra,* this court had declined to determine the question. The court in the Hansen matter reviewed numerous authorities and came to the conclusion that the term applied to prior as well as to subsequent creditors. The reasoning for this conclusion is well stated

in *Pierson* v. *Hickey,* 16 S. D. 46 [91 N. W. 339]. Section 4379 of the Compiled Laws of South Dakota, in the identical language of our statute, provided: "A mortgage of personal property is void as against creditors of the mortgagor, and subsequent purchasers and incumbrancers of the property in good faith for value, unless . . . ," etc. In that case the court reversed a judgment which gave priority to the lien of an unrecorded chattel mortgage as against the lien of an execution levied by an antecedent creditor. At page 47 of 16 S. D. [91 N. W. 340], it is stated: "By the use of the word 'subsequent' it is clear that the legislature intended to qualify only the words 'purchasers and incumbrancers,' and, as no restriction is placed upon the word 'creditors,' all persons of that class are included, whether antecedent or subsequent to the execution of the mortgage. Section 4652 of the Compiled Laws defines the meaning of the word 'creditor' to be 'one in whose favor an obligation exists, by reason of which he is, or may become, entitled to the payment of money,' and to exclude from the protection of the statute all whose debts were in existence when the mortgage was executed would restrict the legislative policy, and require an unwarranted qualification of the word 'creditors.' The injury that an unfiled chattel mortgage may occasion an antecedent creditor is likely to arise from the apparent unincumbered ownership of the property in the possession of his debtor, justifying the inference of perfect security, and inducing delay in the enforcement of his claim. Were none but subsequent creditors within the purview of the statute, the judgment creditor may also be injured by the levying of an execution on property described in a secret mortgage, instead of the unincumbered property of the judgment debtor; and to protect such, as well as subsequent creditors, is the plain purpose of the enactment. . . . The great weight of authority is to the effect that such statutes apply not only to creditors who become such subsequently to the execution of the mortgage, but also to those whose debts existed before that time. (Citing many cases.)"

It is further contended by the defendant that the chattel mortgage should have been received in evidence to show the good faith of the mortgagee. Good faith is not an element bearing on its admissibility. The code section

makes the mortgage void as to those mentioned regardless of the good or bad faith of the mortgagee.

Furthermore, we discover no error in the order of the trial court overruling the demurrer to the complaint.

The judgment is affirmed.

Preston, J., and Langdon, J., being disqualified, did not participate.