[Civ. No. 5388.   Third Appellate District.—January 27, 1936.]

P. J. SCHWARTZLER, Respondent, v. M. LEMAS et al., Defendants and Appellants; M. C. VIERRA et al., Interveners and Appellants.

Hjelm & Hjelm for Appellants Lemas and Vierra.

Samuel V. Cornell for Appellant Dutra.

George L. Klug for Respondent.

PLUMMER, J.—Action to foreclose chattel mortgage. Plaintiff had judgment of foreclosure, from which judgment the defendants and interveners appealed.

The record shows that on the 11th day of September, 1924, the defendants executed and delivered to the plaintiff a chattel mortgage to secure the payment of two promissory notes, one for the sum of $1500, due six months after date, and one for the sum of $3,317, due six months after date. Thereafter, and on or about the 1st day of January, 1925, the defendant M. Lemas entered into a certain agreement with the intervener M. C. Vierra, by the terms of which Lemas agreed to sell, and the intervener Vierra agreed to purchase a half interest in certain property described in the agreement for sale and purchase. The complaint of the intervener Vierra alleges that by this agreement M. Lemas sold to Vierra a half interest in the property therein mentioned. This, however, is an error. A reading of the agreement shows that it was only an agreement to sell, title remaining in Lemas until the sums therein specified as the purchase price had been fully paid, after which Lemas would transfer to Vierra a half interest in the property described in the agreement, by good and sufficient bill of sale, transferring an unincumbered half interest.

The mortgage just referred to was never foreclosed. Thereafter and on the 20th day of January, 1928, the defendants Lemas, as mortgagors, executed a certain other promissory note for $3,317, due two years after date, and to secure the same executed a chattel mortgage bearing date the same day. This mortgage was not recorded until June 14, 1928. The mortgage executed on the 11th day of September, 1924, described the property as: 40 Holstein milch cows, branded with a horseshoe and marked with a bit in the top and bottom of the right ear; 9 three-year-old Holstein heifers; 7 Holstein heifers, one year old; 6 Holstein heifers, three to six months old; 8 Holstein steer calves, six to seven months old; 2 Holstein bulls; 5 work horses; 1 saddle horse; 2 wagons; 2 mowers; 1 rake; cream separator; 1 gasoline engine; all dairy utensils and accessories; 30 hogs also, all increase of said livestock.

The mortgage dated January 25, 1928, described the property as follows: 65 milch cows branded with a horseshoe and marked with a bit in the top and bottom of the right ear of each; 31 heifers branded with a horseshoe marked with a bit in the top and bottom of the right ear of each; 2 Holstein bulls; 6 work horses; 1 saddle horse; 2 wagons; 1 mower; 1

rake; 1 cream separator; 1 gasoline engine; all dairy utensils and accessories; 30 hogs; and the increase of said livestock.

The agreement to which we have referred described the property as follows: A half interest in 40 milch cows; 11 two-year-old heifers; 12 calves, aged from six months to one year; 5 young calves; 2 bulls; 6 horses; and a half interest in all of the hay and farm tools on the premises. The property in the agreement is described as being on the premises occupied by Lemas near the town of Snelling.

The mortgage of 1924 described the property as situate on the Lewis ranch, near the town of Snelling; likewise, the mortgage of 1928 described the property as situate on the Lewis ranch.

There is testimony in the record to the effect that the property described in the agreement is the same property included in the first chattel mortgage, and an allegation in the complaint in intervention, that the mortgage of 1928 included the description of property included in the mortgage of 1924. The complaint in intervention alleged that the plaintiff had knowledge of the sale of the one-half interest to the intervener of the property described in the agreement. The complaint in intervention alleged, in paragraph VI, that the plaintiff claimed a right, title, interest and estate in and to the property described in the mortgage dated January 20, 1928, paramount and superior to that of the intervener. The answer of the plaintiff denied paragraph VI in the following form: "Denies each and every, all and singular, the allegations of paragraph VI of said complaint." One of the findings of the court is as follows: "That all of the allegations of paragraphs III, IV, VI and VII of the complaint in intervention of M. C. Vierra are untrue."

We see no possible means of logically reconciling the pleading and the finding just referred to. The allegation is that the plaintiff claims an interest paramount to the rights of the intervener, and that such claim is not well founded. The denial in the answer is to the effect that the plaintiff does not claim such paramount title, and the finding of the court is that the allegation that the plaintiff claims such paramount title is untrue, which, of course, leaves before us the admission that the plaintiff makes no claim to title paramount to the interest claimed by the intervener. We call attention to this conflict, not for the purpose of basing the decision thereon,

but for the reason that the cause must go back for further hearing, and that this conflict may hereafter be avoided.

■ Paragraph III of the complaint, as we have stated, alleges the entering into the agreement which we have mentioned. The finding of the court is to the effect that that allegation is untrue. This finding is challenged as being contrary to the uncontradicted evidence.

The record shows, without any contradiction, that on or about the 1st day of January, 1925, an agreement was entered into by M. Lemas as party of the first part, and M. C. Vierra, as party of the second part, by the terms of which, "that first party hereby agrees to sell to said second party, and said second party hereby agrees to purchase of first party, a one-half interest in the dairy business and personal property situate on the premises of first party near the town of Snelling, California, as follows:" (Here follows description which we have heretofore set forth.) Concluding as follows: "The title to said property and all of the increase of said stock shall be and remain in the first party until all of said payments are made" (the amounts, terms and times of payment being set forth therein). The payments being made, the agreement then continues: "First party hereby agrees to deliver unto said second party a good and sufficient bill of sale to said personal property, conveying a good and unincumbered title thereto."

The record indicates that payments were made as provided for in the agreement, but no bill of sale is shown to have ever been made transferring title to the one-half interest in the property to the intervener, Vierra, so that his rights, if any, depend simply upon the agreement for a sale, and not upon the actual sale.

While the court found against the allegations of the execution of the agreement, as we have said, it is directly contrary to the uncontradicted testimony in the record. The court likewise found that the plaintiff in the action had no knowledge of the interest of the intervener Vierra in any of the property covered by the mortgage. This finding is directly in conflict with the uncontradicted testimony given by the plaintiff, as follows: "Q. Have you ever seen that paper before? Look at it carefully. A. Look at it carefully? Mr. Klug: I don't know what that paper is. A. I don't know it; I never seen that paper; I think that is a paper that Lemas,

Manuel Vierra—well, I ain't going to say now. Mr. Hjelm: Now, continue your answer. A. I ain't going to tell you anything; I got too much to tell.'' The plaintiff Schwartzler further testified as follows regarding his knowledge of the sale of the interest of Vierra: "A. That is a paper a couple of years ago Vierra came up again and he had a big long paper in his hand and he wanted to borrow $600.00 from me and he had a couple of friends of his with him and I says, why, what have you got to get money on; what have you got for security; on my half of the cattle; and I guess that is the paper he had there. I says, I ain't got nothing to do with you. Q. Go ahead, is that all? A. That is all. Q. He showed you a paper at that time? A. He had a paper. Q. Did you look at it? A. No. Q. He told you he wanted to give you a half interest in the cattle? A. On his cattle; I says, you ain't got no cattle; where did you get any cattle on the Lemas. Q. *He told you that he had cattle on the Lemas place?* A. *Yes, he told me that, but what good is that?''* The plaintiff Schwartzler had no knowledge of the exact time when he saw said paper or was told that Vierra had a half interest in said cattle. Schwartzler further testified concerning his knowledge of said sale to the intervener Vierra as follows: "Mr. Hjelm: Q. You remember when Vierra and some other men came to your garage up in Snelling? A. Yes, sir. Q. Showed you a big paper, you called it, and Vierra wanted to borrow some money—can you hear me all right? Said he wanted to borrow money and give you security on the cattle on Lemas' place? A. *Yes, sir.''* Plaintiff Schwartzler further testified: "Mr. Hjelm: Q. Now, then, I understand that you would have the court understand that in 1928 when the mortgage was prepared you did not at that time have any knowledge of any interest that Vierra claimed or had in the Lemas cattle? A. I told him he didn't have any, and I didn't know whether he did or not, that is his say, I heard he had, nobody told me. Q. Well, did he tell Vierra that he had no interest in the Lemas cattle? A. I told him when he had them papers, I don't know whether them papers or what papers it was, at the time I told him. Q. When he brought the long paper to you, you told him he had no interest? A. I—yes, I ain't loaning money on my own cattle. Q. You say you heard Vierra claim an interest. Who did you hear that from? A. I heard a report around, a good many people

talking about it, he was a fool to try to go in with Lemas that way, buy half interest when another man got a mortgage on it; that is all I heard fellows talking around town there; that is where I got it. Q. And did you have—after you heard that statement made to you that Vierra was taking an interest did you go to Vierra and ask him what his claim was? A. *No.*'' Plaintiff Schwartzler further testified as follows concerning his knowledge of said sale: ''Q. In 1927 you heard that Vierra claimed an interest, didn't you? A. No, sir, not in '27. Q. In '26 did you hear it? A. I don't know when that was, that is guess work, I heard many times. Q. You heard many times and you can't now really say. The Court: You mean the first time? When you first heard it, that is the question? A. I don't know when it was; I couldn't say that correctly; I know I had the mortgage quite a while, the first mortgage. Mr. Hjelm: Before you heard it? A. Before I heard he had anything to do with it. Q. You heard it before the new mortgage was entered? A. I heard it. Q. And then you have told the court that you heard about Vierra's claim after the old mortgage was made? A. Yes, sir.'' The plaintiff Schwartzler further testified as follows: ''Q. Do you remember in 1926, about a year after the meeting in the bank, Mr. Silva, Mr. Vierra came to you, and Mr. Vierra wanted to borrow $200.00, and offered to you— A. $200.00? The Court: Wait until the question is finished. Mr. Hjelm: And offered to give you a half interest in the Lemas cattle as security for the loan, and you said to Vierra, in Silva's presence, that Vierra didn't have any interest and he couldn't even move a calf away from the place? A. Yes, sir, I said that; I didn't look at the paper; I don't know what paper he had. Q. I didn't refer to the paper, but it is your impression that he had a paper? A. You asked me that this morning and that is what I told him, that he had a paper in his hands. Q. In my question I just asked you I didn't refer to a paper, but I referred to the question, you remember that occasion and that conversation and your answer? A. Yes, sir. Q. That is true? A. Yes, sir, that is true.''

The record further shows that some time after the execution of the second mortgage the plaintiff loaned to the intervener Vierra $500, with which to purchase a like half interest in cattle to replace portions of the herd that had been slaugh-

tered by state authorities in eradicating the "hoof and mouth" disease.

On behalf of all of the appellants it is contended that the second mortgage was void for the reason that a number of weeks intervened between the execution and the recordation thereof. The cases cited, however, do not support the contention. It clearly appears in the cases of *Williams* v. *Belling*, 76 Cal. App. 610 [245 Pac. 455], *Wolpert* v. *Gripton*, 213 Cal. 474 [2 Pac. (2d) 767], *Noyes* v. *Bank of Italy*, 206 Cal. 266 [274 Pac. 68], and *United Bank & Trust Co.* v. *Powers*, 89 Cal. App. 690 [265 Pac. 403], that unless the party contesting the validity of the chattel mortgage appeared with some rights or became a creditor of the mortgagor during the interval between execution and recordation, such party is in no position to complain. This disposes of the complaint in intervention by John P. Dutra.

The defendants Lemas set up a counterclaim, but the testimony upon this question is conflicting and the finding of the court in relation thereto is binding upon us, and need not be considered. The defendants also allege a certain agreement by which the plaintiff agreed to receive payments in the sum of $50 a month, but the record shows that this agreement was not complied with, and also, we think, fails to show any consideration for such an agreement.

As to the defendants Lemas and the intervener Dutra, we find nothing in the record justifying a reversal of the judgment. As to the intervener Vierra, as we have shown, the uncontradicted testimony shows the execution of the agreement; shows that the intervener, together with Lemas, remained in possession of the property from the date of the execution of the agreement; also, shows knowledge of the interest of the intervener on the part of the plaintiff, and that this knowledge was possessed by the plaintiff prior to the execution of the second mortgage.

On the part of the plaintiff it is contended that under and by virtue of the provisions of section 538 of the Penal Code, a sale by a mortgagor of property covered by a chattel mortgage is void by reason of the fact that sales made thereunder, without written notice and a written consent by the mortgagee constitutes the commission of a felony on the part of the mortgagor. If this section applied to the instant case, it would not affect the title of the intervener Vierra.

In 11 C. J. 624 we find the following: "A statute which makes it criminal in a mortgagor to sell the mortgaged property while the mortgage remains in force and unsatisfied, without the written consent of the mortgagee, but does not punish the purchaser and does not prevent title passing to the purchaser, subject to the mortgage lien when such a sale is made, does not affect the purchaser." The section, however, relied upon by the respondent, we think does not apply, for the simple reason that in the instant case no sale is shown to have been made by Lemas to the intervener; only an agreement of sale under certain conditions.

In the case of *Morris* v. *Persing,* 76 Neb. 80 [107 N. W. 218], it is specifically held that an agreement to make a sale of mortgaged property is neither *malum in se* nor *malum prohibitum* where the statute provides only that it is an offense to make a sale and makes no reference to an agreement to sell in the future.

The record shows, as we have stated, that the interest of the intervener Vierra includes only a portion of the property described in the second mortgage, which may properly be determined upon a retrial of this cause.

■ The point is further urged by the appellants that the affidavits to the second mortgage were made only by the defendant Lemas. As the husband has control of community property and may mortgage without consent of the wife, this contention is without merit.

For the reasons stated, the judgment of the trial court as to the defendants Lemas and intervener John P. Dutra is affirmed. As to the intervener M. C. Vierra the judgment is reversed, and the cause remanded for further proceedings.

Thompson, J., and Pullen, P. J., concurred.