263 F.2d 513
 Elias MILLER, Paul Miller, Anna Miller and Helen Miller, and
Elias Miller and Paul Miller, as executors of the
estate of George Miller, deceased, Appellants,
v.
Irving SULMEYER, trustee in bankruptcy of the estate of
Delcon Corporation, bankrupt, Appellee.
 No. 15781.
 United States Court of Appeals Ninth Circuit.
 Jan. 16, 1959, Rehearing Denied April 17, 1959.
 
 Sylvan Y. Allen, Max Mayer, Willis & McCracken, Ernest R. Utley, Los Angeles, Cal., for appellants.
 George M. Treister, Quittner, Stutman & Treister, Los Angeles, Cal., for appellee.
 Before STEPHENS, CHAMBERS and BARNES, Circuit Judges.
 CHAMBERS, Circuit Judge.
 
 
 1
 The Millers sold a business in June, 1954, to the now bankrupt Delcon Corporation. They took back from Delcon a purchase money mortgage on chattels transferred to Delcon. There was a 79 day delay in recording of the chattel mortgage.[1] This failure of the Millers to record was due to the negligence of a 'trusted employee' who was apparently too busy with his defalcations of his employers' cash to attend to routine business.
 
 
 2
 Eventually in December, 1954, under the terms of the mortgage the Millers repossessed the chattels and resold the property in March, 1955, for $82,500. All agree this was a fair price.[2]
 
 
 3
 Delcon was insolvent at the time of the repossession, but solvent at the time of execution of the mortgage. The Millers filed a claim with trustee Sulmeyer for $141,742.50. This was mainly the balance due on the original note and mortgage which were in the amount of $189,000. Objections were made to the whole claim by the trustee. He asserted that by superimposing the bankruptcy act on the California state law the trustee had a right first to recover the proceeds of the sale of the chattels after which the claim could be allowed.
 
 
 4
 At the time of hearing before the referee there were on file claims for $8,906.95 (including some $7,863.64 due to the ubiquitous director of internal revenue) which originated prior to the filing date of August 19, 1954, for the chattel mortgage, but probably after the date of the mortgage. All other creditors apparently postdated the recording date.
 
 
 5
 The referee ruled that the Millers must repay the sum of $8,906.95, at which time they could have their claim for $141,742.50 allowed along with a supplemental claim in the amount of $8,906.95, both items to be general and unsecured claims. On review, the district court directed the referee to enter judgment against the Millers for $82,500 (less certain small credits). Upon payment thereof the Millers were to have their claim of $141,742.50 allowed as well as a supplemental claim for $82,500, all as unsecured claims. From this heavy blow, the Millers have appealed.
 
 
 6
 And, so the question here is whether the trustee is entitled to this windfall of $82,500. If so, the result is that the Millers originally sold their property without getting any security. This court is of the opinion, try as it may to reach a different result, that the case of Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (reversing In re Sassard & Kimball, 9 Cir., 45 F.2d 449) controls and that the district court must be affirmed. Cf. Mercantile Trust Co. v. Kahn, 8 Cir., 203 F.2d 449.
 
 
 7
 All agree that but for the interposition of the bankruptcy adjudication the Miller repossession and sale under California state law would be impeccable as against creditors of Delcon becoming such after August 19, 1954. It would seem equally clear that creditors whose debts originated in the delayed period of 79 days under California law might have attacked the mortgage-- here to the extent of $8,906.95.
 
 
 8
 The following extracts from the bankruptcy act should be quoted:
 
 
 9
 11 U.S.C.A. 110, sub. c (Bankruptcy Act, 70, sub. c):
 
 
 10
 'The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists.'
 
 
 11
 11 U.S.C.A. 110, sub. e(1), (Bankruptcy Act, 70, sub. e(1)):
 
 
 12
 'A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor.'
 
 11 U.S.C.A. 96 (Bankruptcy Act, 60):
 
 13
 '(a) (1) A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.
 
 
 14
 '(b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent.'
 
 
 15
 It is true, as the Millers say, the infirmity in the California chattel mortgage in Moore v. Bay, supra, was slightly different. There it was failure to give the required statutory notice of intention to give a chattel mortgage. However, this court finds itself unable to distinguish that case and the Millers' case in principle.
 
 
 16
 While the members of this court might belong to the legislative school that would vote to require trustees to take over rights as the state left them, still it is well settled that bankruptcy statutes can do more. And it would appear the sections above quoted do pick up the California state law, use it as a springboard and go beyond it. Section 70, sub. e(1) says if any creditor could knock out the 'transfer' as to him, the transfer is void as to the trustee. Section 70, sub. c only requires a hypothetical creditor not a real one. And Section 60 does nothing to weaken the other two sections. It buttresses them.
 
 
 17
 The Millers attack the constitutionality of the sections as here interpreted to take away from them their $82,500. Those things are constitutional which the Supreme Court says are constitutional. The point is answered by that court in Wright v. Union Central Ins. Co., 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490.
 
 
 18
 The Millers belatedly made three other points. The first is that the delay was excusable. The fact that the employee was simultaneously embezzling other assets is no excuse. None other is suggested.[3] Second, it is argued that purchase money mortgages are exempt. The language of 2957 of the West's Ann. California Civil Code is all inclusive. The general rule elsewhere is against the Millers and no persuasive California authority is cited for the idea.[4] Thirdly, it is suggested that the repossession before bankruptcy cured the infirmities. This might be true in some states, but the California rule appears to be against the Millers on the point. Noyes v. Bank of Italy, 206 Cal. 266, 274 P. 68.
 
 
 19
 While it may be said that the state laws imposing penalties for failure to record instruments are drastic enough without superimposing additional federal sanctions, still the sanctions were written by the Congress and this court must give effect to them, harsh as they seem to be here.
 
 
 20
 While the brief for appellants is an able one, this court just cannot get away from the proposition that if the mortgage was subject to attack under California law by any creditor or even by the creditor who wasn't, but who might have been, then the bankruptcy act and Moore v. Bay, supra, permit the trustee to demolish the creditor's security although partially valid under state law (or even wholly valid in some circumstances because of the absence in fact of a certain type of creditor).
 
 
 21
 The order subject to this appeal is affirmed.
 
 
 
 [1]
 West's Ann.California Civil Code 2957 reads as follows:
 'A mortgage of personal property * * * is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value, unless
 '4. The mortgage, if of personal property other than crops growing or to be grown or animate personal property, is recorded in the office of the recorder of the county where the property mortgaged is located at the time the mortgage is executed * * *.'
 
 
 [2]
 The petition of three creditors for an adjudication of involuntary bankruptcy of Delcon was filed on February 23, 1955. The adjudication was made by the referee on March 16, 1955
 
 
 [3]
 While California does not require instantaneous recording, it does require that it be recorded as soon as practicable. And there is no California case which has upheld anything like a 79 day delay. See Wolpert v. Gripton, 213 Cal. 474, 2 P.2d 767, and Williams v. Belling, 76 Cal.App. 610, 245 P. 455
 
 
 [4]
 The court does not consider the situation in In re Mercury Engineering, D.C.S.D.Cal., 68 F.Supp. 376, to be parallel. There the district court determined that according to California law it was not necessary in the case of a purchase money mortgage to comply at all with 3440 of the West's Ann.California Civil Code requiring the filing of advance notice of intention to give a chattel mortgage. Therefore, the bankruptcy sections do not come into operation. Surely California would not hold that a purchase money chattel mortgage need never be recorded. The reason is that a large amount of apparently unencumbered assets permits a false appearance of economic health if they are in fact encumbered. In such circumstances general creditors would think at least that there was a substantial fund for all general creditors