[No. 12631. In Bank. — November 29, 1890.]

86  531
120  420

J. D. GIBBS, RESPONDENT, v. J. H. RANARD, AP-PELLANT.

ACTION FOR BREACH OF CONTRACT — SALE OF NEWSPAPER-STAND — PROVISION FOR SATISFACTORY ARRANGEMENTS. — In an action to recover damages for the failure of the buyer to comply with a contract for the purchase of a newspaper and stationery stand, which, by its terms, was to be void unless such arrangements could be made with certain newspapers as would be satisfactory to him, evidence that the buyer made arrangements with the newspapers upon the same terms that they had given to the seller, and that such terms were stated to the buyer at the time of the negotiation, and were then agreed to be satisfactory to him, sufficiently shows a compliance with the condition upon which the contract was to become operative.

ID. — PAROL EVIDENCE — WRITTEN CONTRACT — MERGER. — In such action, parol evidence as to the conversation between the buyer and the seller, with reference to the arrangements with the newspapers, whether had before or after the written contract was executed, is admissible to show

that the buyer knew what the arrangements of the seller with the news-papers were at the time of the agreement, and that he would be sat-isfied with a renewal of the same arrangements, and to show that his repudiation of the agreement was not in good faith.

ID. — LIEN OF SELLER — PASSING TITLE — BREACH OF EXECUTORY CONTRACT. — Such contract being but an agreement to sell, section 1749 of the Civil Code, and other sections relating to the enforcement of a lien of the seller, do not apply, as the title to the property remained in the seller, and he could not enforce a lien against his own property, or sell it as the prop-erty of the buyer; and an action for damages for the breach of such executory contract will lie without the enforcement of any lien, or a re-scission of the sale, as provided in section 1749 of the Civil Code.

ID. — DAMAGES — LOSS ON RESALE — EVIDENCE. — Evidence that the seller notified the buyer, upon his refusal to consummate the agreement of purchase, that he would sell the property to some one else for what he could get for it, and hold him responsible for the difference, and that he advertised it and sold it for a certain price, which was the highest price he could get, is competent as tending to show the amount of dam-ages actually resulting from the breach of the contract.

ID. — VALUE FIXED BY CONTRACT — EVIDENCE. — In an action for damages for the breach of an agreement to buy, where the value of the property is fixed as between the parties by the contract, it is not necessary for the seller to prove the value of the property.

APPEAL from a judgment of the Superior Court of Sonoma County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*W. B. Haskell,* and *E. S. Lippitt,* for Appellant.

*Rodgers & Munday,* for Respondent.

WORKS, J. — The parties to this action entered into the following contract: —

" This agreement, made and entered into this twenty-eighth day of June, in the year of our Lord one thou-sand eight hundred and eighty-six, between J. D. Gibbs, of the city of Petaluma, county of Sonoma, and state of California, the party of the first part, and J. H. Ranard, of the same place, the party of the second part, —

" Witnesseth, that the said party of the first part, in consideration of the covenants and agreements on the part of the said party of the second part hereinafter con-

tained, agrees to sell and convey unto the said party of the second part, and said second party agrees to buy, the newspaper route, business, good-will of said business, as carried on and conducted by the party of the first part in said city of Petaluma, state and county aforesaid, and more particularly described as follows: The buying and selling of daily and weekly newspapers, the buying and selling of magazines, the buying and selling of other reading matter, and the delivery of the same, and the buying and selling of stationery, books, and other goods, as conducted and sold at his newspaper-stand, in the Masonic Block, situate on Western Avenue, in said city of Petaluma, for the sum of five thousand dollars, lawful money of the United States; and the said party of the second part, in consideration of the premises, agrees to pay to the said party of the first part the sum of five thousand dollars, lawful money, as follows, to wit: One dollar in hand paid, the receipt whereof is hereby acknowledged, and the balance, four thousand nine hundred and ninety-nine dollars ($4,999), by note on demand, drawing interest from date at the rate of ten per cent per annum, interest payable quarterly. *It is understood and agreed, on the part of both parties hereto, that in the event that such arrangements as shall be satisfactory to the party of the second part cannot be made with all the San Francisco daily papers, then this agreement shall be null and void.* It is also understood and agreed that on making a bill of sale of this said business by the party of the first part, he will enter into a written agreement not to go into the same kind of business in said city of Petaluma for the period of five years from this date. It is understood that this sale shall take place on the first day of July, A. D. 1886, and that the note shall be dated July 1, 1886.

" And it is understood that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators, and assigns of the respective parties.

" In witness whereof, the said parties to these presents

have hereunto set their hands and seals the day and year first above written.

[Seal.]           " J. D. GIBBS.

[Seal.]           " J. H. RANARD.

" Signed, sealed, and delivered in the presence of H. P. Brainerd."

The complaint alleges the making of the contract; that the defendant, after the execution of said contract, made satisfactory arrangements with the proprietors and publishers of all of the San Francisco papers; that he failed and refused to comply with the terms of the contract, and refused to pay the money or execute the note provided for therein. It is also further alleged " that after the said defendant refused to perform his said contract, as aforesaid, and refused to accept the said property and business, as aforesaid, or to pay therefor, or to deliver his promissory note, as by him agreed, and to accept the said bill of sale, as aforesaid, the plaintiff, on the —— day of July, advertised the said property and business described in said contract, by publication in the San Francisco daily Chronicle, and offered the same for sale, and after such publication and notice and advertisement, one J. E. Jewell offered to purchase the same and pay therefor the sum of $2,250; that before selling the same to other parties than the defendant, the plaintiff notified the defendant of his, plaintiff's, intention to sell the same; and in case he could not, within a reasonable time, find a purchaser ready and willing to pay as much as the defendant agreed to pay, that he, the plaintiff, would sell the same for the best price obtainable, and hold the defendant liable for all loss and damage by reason of his said refusal to take and pay for the said property and business, and for the difference between the contract price and the amount which he, plaintiff, should and could obtain from the other purchasers, and plaintiff, receiving no other or better offer

than the offer of said J. E. Jewell, and the defendant still refusing to perform his contract, sold and delivered, at Petaluma, said property and business to the said J. E. Jewell for the highest market price obtainable, to wit, the sum of twenty-two hundred and fifty dollars ($2,250), to the plaintiff's damage in the sum of $2,750, being the difference between the sum of $2,250, the price at which J. E. Jewell purchased, and the contract price agreed to be paid by the defendant."

The plaintiff recovered a verdict and judgment in the court below for $2,749. A motion for a new trial was denied, and the defendant appeals.

The appellant contends that the evidence fails to show that he was able to make satisfactory arrangements with the San Francisco papers, and that therefore the verdict is against law. But the evidence tends to show that the appellant was buying the route for his son and one Dickenson; that, at the time the contract was being made, the terms upon which these newspaper agencies were held by the respondent were stated by him; that such terms were satisfactory to the defendant, if the same rights could be transferred to him, or his son and Dickenson, for whom he was buying; that it was understood that the appellant's son was to go to San Francisco with the respondent and see if such arrangements could be made; that they did visit the different newspaper offices, and found that the arrangements could be made; that the arrangements were then and there made by the son, and each and all of the papers instructed to change the agency and forward the papers thereafter to the address of the appellant, which was done. The respondent also testified that when the appellant refused to carry out the contract he simply said he was not going to have anything more to do with it, and assigned no reason therefor; and although the appellant denies this, he testifies, himself, that some of his family were objecting to his going into the transaction, and that these objec-

tions had some effect in inducing him to repudiate the purchase.

Taking all of the evidence, it is quite clear to our minds that the defendant did not refuse to comply with his contract for the reason that satisfactory arrangements could not be made with the newspapers. The contract cannot be construed as giving him the right to say, arbitrarily, that the terms to be procured from the papers were not satisfactory, if they were reasonable and just, as appears to have been the case. It is true, counsel for the appellant contend that this testimony was incompetent, for the reason that it tended to show that what was said was a part of the negotiations, and was merged in the contract when executed. The evidence is somewhat conflicting as to whether this conversation occurred before or after the contract was executed, but we think it makes no difference. It was competent for the purpose of showing that the defendant knew what the present arrangement with the papers was, that he would be satisfied with a renewal of the same arrangement, and that his refusal to consummate the agreement was not in good faith and for the reason now assigned therefor.

It is further contended by the appellant that the respondent did not take the proper steps to fix the amount of damages he was entitled to recover from the appellant under section 1749 of the Civil Code, and other sections relating to the enforcement of liens in such cases. But here there was no sale of the property, and therefore the sections of the code relied upon have no application. The contract, a breach of which is alleged, was not one of sale, but an agreement to sell upon certain terms. This contract was never consummated by the execution of the bill of sale provided for, or the payment of the purchase-money, or any part of it, or the execution of the note provided for therein. This action is not to rescind a contract of sale, or to enforce a lien, but to recover damages for the failure to execute a contract of

sale as provided in the contract sued upon.  The prop-
erty not having been sold, the title thereto remained in
the respondent, and he could not enforce a lien against
his own property, or sell it as the property of appellant,
as provided in the code.  The evidence shows that the
appellant, having refused to consummate the purchase,
was notified by the respondent that he would sell the
property to some one else for what he could get for it,
and hold him responsible for the difference; that he ad-
vertised the route for sale in a newspaper, and finally
sold it for $2,250, and that that was the greatest sum he
could procure for it.  We think this evidence was com-
petent, as tending to show the amount of damage result-
ing from the breach of the contract, and that the jury
were justified, from the evidence, in finding for the re-
spondent in the amount of the verdict.  It was not
necessary for the appellant to prove the value of the
property.  That was fixed, as between these parties, by
the contract.

For these reasons, the court did not err in overruling
the motion for a nonsuit, and the verdict of the jury
was not against law, and was sustained by the evidence.

Judgment and order appealed from affirmed.

SHARPSTEIN, J., Fox, J., PATERSON, J., and McFARLAND,
J., concurred.

Rehearing denied.