[Civ. No. 5524. First Appellate District, Division Two.—May 6, 1926.]

# E. J. PALMER et al., Appellants, v. M. EMANUEL, Respondent.

[1] DEBTOR AND CREDITOR—PAYMENT BY NOTE—EXPRESS AGREEMENT— RIGHT OF ACTION.—The acceptance of a note for a debt does not discharge the debt unless expressly agreed to be payment, but in such case the right of action on the debt is suspended until the maturity of the note given, and suit may be brought on the original debt in case of the nonpayment of the accepted note.

[2] ID. — PAYMENT — BURDEN OF PROOF — EVIDENCE. — The burden of showing that an express agreement that the giving and acceptance of a note for a debt was in payment thereof rests on the party relying on it, and the presumption is that the note was not taken in absolute payment; and neither a receipt in full nor a formal release, or even proof that an earlier note was marked canceled, will prove the existence of an express agreement that the later note was to be in payment of the earlier note.

[3] ID.—RENEWAL MORTGAGES—PAYMENT OF EARLIER INDEBTEDNESS— EVIDENCE — FINDINGS. — In this action to recover a balance alleged to be due from defendant to plaintiffs, which balance defendant had agreed to pay after he had paid two certain promissory notes secured by mortgages upon certain real property, the evidence having shown that said mortgages had been released of record and new mortgages in favor of the same mortgagees had been recorded, but there having been no evidence showing that the old notes or mortgages had been surrendered to the makers, or been paid, or that the new mortgages were taken in payment of the first mortgages, the trial court was justified in finding that the indebtedness in question had not been paid and that, therefore, the condition upon which the right of plaintiffs to the balance due from defendant should accrue had not yet occurred.

---

(1) 30 Cyc., p. 1194, n. 28, p. 1196, n. 32. (2) 30 Cyc., p. 1264, n. 28, p. 1266, n. 39, p. 1293, n. 72. (3) 14 C. J., p. 708, n. 45 New; 30 Cyc., p. 1187, n. 82, p. 1192, n. 7.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge. Affirmed.

The facts are stated in the opinion of the court.

---

1. See 20 Cal. Jur. 920, 924; 21 R. C. L. 59.
2. See 20 Cal. Jur. 926.

T. John Butler and W. W. Watson for Appellants.

John J. Goldberg and David L. Levy for Respondent.

STURTEVANT, J.—Some time prior to 1913 The Ellis Landing and Dock Company was organized as a corporation, having 1,000 shares of the par value of $500 each. On June 26, 1914, the corporation was indebted to George E. Ellis and Selina Ellis in the sum of $150,000, evidenced by a promissory note and secured by a mortgage on lands at Richmond, Contra Costa County, said indebtedness being a part of the purchase price. The corporation was also indebted to Louis Saroni in the sum of $100,000, evidenced by a promissory note secured by a second mortgage. On June 26, 1914, E. J. Palmer, Daniel Corcoran, and R. T. Shannon were the owners of 499 shares of the capital stock of The Ellis Landing and Dock Company and each owned an undivided one-third interest. At the same time M. Emanuel owned 499 shares and two shares stood in the name of N. A. Eisner for the purpose of qualifying him to act as a director. On the date last mentioned E. J. Palmer, Daniel Corcoran, and R. T. Shannon, as vendors, entered into an executory contract to sell to the defendant M. Emanuel their stock. The contract provided for numerous partial payments. On the twentieth day of November, 1918, E. J. Palmer and Daniel Corcoran commenced this action against M. Emanuel to recover certain installments, to wit, installments alleged as becoming due between October 1, 1916, and November 20, 1918, and which the plaintiffs alleged had not been paid. As R. T. Shannon refused to join the plaintiffs they made him a defendant. On the ninth day of August, 1920, the plaintiffs filed a supplemental complaint. The defendants answered separately. The record shows that other persons intervened, but no questions regarding the rights of such persons are involved on this appeal, and for the purpose of keeping the record clear no further mention of them will be made.

On October 26, 1920, the action came on for trial before the trial court sitting without a jury. During the trial it transpired that the defendants Shannon and Emanuel had so settled their own differences that the ratable amount payable to Shannon under the executory contract had been

paid. The defendant Shannon therefore is not interested in this appeal.

In its judgment the trial court awarded to the plaintiffs all relief asked by them excepting an installment of $18,800. As to that installment the court ruled against the plaintiffs and in favor of the defendant M. Emanuel and made findings accordingly. All rulings and findings made on the specific subject of the allowance or disallowance of plaintiffs' claim to be entitled to judgment for the said $18,800 are presented on this appeal, but no other question.

The passage in the executory contract of purchase which is the subject of this controversy is recited by the trial court in the second finding, as follows:

"That on or about June 26, 1914, plaintiffs and defendant R. T. Shannon on the one part made and entered into an agreement in writing with defendant M. Emanuel wherein and whereby plaintiffs and defendant R. T. Shannon sold to defendant M. Emanuel, and defendant M. Emanuel bought from plaintiffs and defendant R. T. Shannon four hundred ninety-nine (499) shares of the capital stock of the Ellis Landing and Dock Company, a corporation, for the consideration of forty thousand dollars ($40,000.00), and that it was provided in said agreement that defendant M. Emanuel should pay the said purchase price of forty thousand dollars ($40,000.00) as follows: . . . and the balance of said purchase price in the sum of eighteen thousand eight hundred dollars ($18,800.00) within six (6) months after the indebtedness of one hundred fifty thousand dollars ($150,000.00) and interest due to George E. Ellis and Selina E. Ellis on the first mortgage held by George E. Ellis and Selina E. Ellis against the real property of The Ellis Landing and Dock Company, and the indebtedness of one hundred thousand dollars ($100,000.00) and interest due to Louis Saroni on the second mortgage held by said Louis Saroni against the real property of said the The Ellis Landing and Dock Company, and all additional sums of money loaned said corporation by said Louis Saroni shall have been fully paid, satisfied, discharged and released; . . . " The eighth finding is as follows: "It is provided in paragraph VIII of said agreement that in addition to the installment payments to be made by defendant M. Emanuel to parties of the first part aggregating

the sum of twenty-one thousand two hundred dollars ($21,-200.00), defendant M. Emanuel should pay to said parties of the first part the sum of eighteen thousand eight hundred dollars ($18,800.00) within six (6) months after the indebtedness of one hundred fifty thousand dollars ($150,-000.00) and interest due to George E. Ellis and Selina E. Ellis on the first mortgage held by said George E. Ellis and Selina E. Ellis against the real property of said corporation the The Ellis Landing and Dock Company, and the indebtedness of one hundred thousand dollars ($100,000.00) and interest due to Louis Saroni on the second mortgage held by said Saroni against the real property of said corporation the The Ellis Landing and Dock Company, and all additional sums of money loaned said corporation by said Louis Saroni shall have been fully paid, satisfied, discharged and released; *said indebtednesses in this paragraph set forth have not been paid and the condition upon which the right of the parties of the first part to said eighteen thousand eight hundred dollars ($18,800.00) shall accrue has not yet occurred.*" The court further found that the $18,800 had not been paid.

The appellants' case presents the question as to whether that portion of finding VIII which we have italicized is sustained by the evidence.

The mortgage by The Ellis Landing and Dock Company to George E. Ellis and Selina E. Ellis for $150,000 was executed December 4, 1913. A release reciting that said mortgage, "together with the debt thereby secured is fully paid, satisfied and discharged," was recorded February 26, 1920, at fifty minutes past 11 o'clock A. M. The mortgage of $100,000 to Louis Saroni was executed on the fifth day of December, 1913. A release reciting that said mortgage, "together with the debt thereby secured, is fully paid, satisfied and discharged," was recorded December 3, 1919, at two minutes past 4 o'clock P. M. The record shows that a mortgage for $140,000, executed by The Ellis Landing and Dock Company to Selina E. Ellis individually and as executrix of the last will of George E. Ellis, was recorded February 26, 1920, at forty-eight minutes past 11 o'clock A. M. It also shows that a mortgage by the same company in favor of Louis Saroni to secure a promissory note of $29,700 was recorded February 26, 1920, at

fifty-two minutes past 11 o'clock A. M. At the time of the trial of the case George E. Ellis was dead. Selina E. Ellis was not called as a witness. Louis Saroni was called as a witness and testified that the mortgage executed to him in 1920 was a substitute for the mortgage executed to him in 1913 and that nothing was said and no agreement was had between the parties to the effect that the second mortgage was taken in payment of the first mortgage. M. Emanuel was called as a witness and gave the same testimony regarding the second mortgage executed to Saroni. He also testified that the second mortgage given to Selina E. Ellis was given to substitute the old mortgage and that nothing was said by the parties to the effect that the second mortgage was taken in payment of the earlier mortgage. No witness testified that the second mortgage to Selina E. Ellis or the second mortgage to Saroni was given in absolute payment of the prior mortgage. There was no evidence that the old notes or the mortgages executed to secure them were delivered or surrendered to the makers.

[1] In *Comptoir D'Escompte* v. *Dresbach*, 78 Cal. 15, at page 20 [20 Pac. 28, 30], the court said: "It has been repeatedly held by this court that the acceptance of a note for a debt does not discharge the debt unless expressly agreed to be payment; that in such case the right of action on the debt is suspended until the maturity of the note given, and suit may be brought on the original debt in case of the nonpayment of the accepted note." [2] The burden of showing that an express agreement has been made rests on the party relying on it, and the presumption is that the later notes were not taken in absolute payment. (*Bridge* v. *Connecticut Mut. Life Ins. Co.*, 167 Cal. 774, 781 [141 Pac. 375].) A receipt in full does not prove the existence of the agreement. (*Comptoir D'Escompte* v. *Dresbach, supra.*) Neither does a formal release. (*Tolman v. Smith*, 85 Cal. 280, 290 [24 Pac. 743].) Nor that the note was marked canceled. (*Steinhart* v. *National Bank*, 94 Cal. 362, 367 [28 Am. St. Rep. 132, 29 Pac. 717].) The foregoing rules were applied to a debt secured by mortgage. (*Van Sandt* v. *Alvis*, 109 Cal. 165 [50 Am. St. Rep. 25, 41 Pac. 1014].) In *White* v. *Stevenson*, 144 Cal. 104, at page 108 [77 Pac. 828, 830], the court said: "The acceptance by the plaintiff of the note and mortgage

of 1895 as a renewal of the note and mortgage of 1890, or in substitution therefor, did not of itself operate as an extinguishment or discharge of the latter. One executory agreement is not extinguished by the execution of another between the same parties; nor is a security for an obligation merged in another security of the same degree which is accepted for the same obligation. It is a well-settled rule that, in the absence of an agreement to that effect, a promissory note is not paid by the execution of another note, but that the time for its payment is thereby merely suspended until the maturity of the new note." *Miguel* v. *Miguel*, 184 Cal. 311 [193 Pac. 935], is a parallel case. Commencing on page 313 the court said: "The finding of the court, which was in effect that payment was not to be made to the plaintiff until the defendant had been able to remove the burden of the partnership debt which he assumed, is sustained by both the considerations mentioned. The manifest object of the arrangement was to give the defendant time to work out the two obligations, the one to Silva and the one to the plaintiff, by making the latter not payable until the first had been paid. The case was one of a sale of an interest in a business which was in debt. It was a very natural understanding that the purchase price of the interest should not be payable until the debt to which the interest was subject had been worked out. This object would not be accomplished if the purchase price should become payable upon the substitution merely of another as the creditor of the defendant on his obligation to Silva. The essence of the purpose of the understanding must have been that the burden of that debt should be removed from the defendant before he was required to pay the plaintiff." [3] In view of the foregoing authorities it is quite clear that the findings of the trial court in the instant case were supported by the evidence and that the findings support the judgment.

The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 2, 1926.