[Sac. No. 5105. In Bank.—August 24, 1938.]

P. J. SCHWARTZLER, Respondent, v. M. LEMAS et al.,
Defendants; M. C. VIERRA, Appellant.

Hjelm & Hjelm for Appellant.

George L. Klug for Respondent.

THE COURT.—This is an appeal by the intervener Vierra from a judgment in favor of the plaintiff foreclosing a chattel mortgage on dairy cattle and equipment. The trial court found that the intervener had agreed to purchase a one-half interest in the property covered by the mortgage and had become a partner of the owners in the conduct of the dairy business, but that the intervener's interest was so acquired after the execution of the chattel mortgage and before a renewal thereof, and was subject and subordinate to the plaintiff's right of foreclosure. Judgment was accordingly entered against the defendants Lemas decreeing a foreclosure with a deficiency, if any, against said defendants. No personal judgment was rendered against the intervener, the court merely adjudging that he acquired his interest subject to the existing debt.

This is a second appeal in the same action. The former judgment determined that the intervener's interest was subject to the existing debt and was reversed for the principal reason that it could not be ascertained from the record whether the personal property included in the original mortgage was the same as that included in the renewal mortgage, inferentially holding, and we think properly, that if it should appear on a retrial that the property included in both mortgages was the same, the intervener's interest would be

subject to the existing debt. (*Schwartzler* v. *Lemas*, 11 Cal. App. (2d) 442 [53 Pac. (2d) 1039].) On the retrial it was stipulated that said property was and is the same.

It is insisted by the intervener that by his contract of purchase he became a partner in the dairy business and that the findings and judgment on the second trial to the effect that the partnership property is charged with the mortgage debt is not supported by the evidence, and that in any event he is not personally liable on the mortgage note.

This appeal was before the District Court of Appeal of the Third District, and a judgment of affirmance rendered. A hearing in this court was granted, mainly for the reason that it was indicated therein that a personal judgment had been rendered against the intervener-appellant, when such was not the case. The appellant was not a party to and had not assumed the obligation either directly or indirectly. The other points involved on the appeal are correctly determined in the following portions of the opinion of the District Court of Appeal which are hereby adopted, to wit:

"Prior to September, 1924, M. Lemas and wife owned the dairy cattle and equipment which are involved in this action. September 11, 1924, M. Lemas executed a chattel mortgage on their forty head of cattle and dairy equipment to secure the payment of two promissory notes due in six months, one for $1,500 and the other for $3,317. The intervener, M. C. Vierra, lived in the Lemas home and was employed by them in the dairy business. Vierra had knowledge of the first chattel mortgage. January 1, 1925, the owners of the cattle and dairy equipment executed a written contract agreeing to sell to Vierra 'one-half interest in *the said dairy business* and personal property', which, it is conceded, are the same business and property involved in this action. The contract provided for payment of the purchase price of $3,500 in instalments 'on or before the 1st day of January, 1929'. The entire purchase price of the property was fully paid prior to 1928. The original chattel mortgage was never foreclosed. January 20, 1928, Mr. and Mrs. Lemas executed to the plaintiff, Schwartzler, a chattel mortgage on the same dairy cattle and equipment which were involved in the first transaction to renew the promissory note for $3,317, which was included in the first mortgage. This note became due in two years from

the date of the second mortgage. At the time of the execution of the second chattel mortgage Mr. and Mrs. Lemas and Vierra were in joint possession of the property, and were engaged in operating the dairy. The plaintiff knew of the interest of Vierra in the dairy business and property which was mortgaged. The $3,317 note for which the second chattel mortgage was given, was the same note which was included in the original mortgage. The second mortgage was, therefore, given to renew and secure the payment of one of the notes for which the first mortgage was executed. Only about $700 was thereafter paid on this last secured note. December 6, 1933, this suit was commenced against Mr. and Mrs. Lemas to foreclose the last-mentioned chattel mortgage. By permission of court, M. C. Vierra intervened in that action. The cause was tried, and the court adopted findings in favor of the plaintiff and thereupon rendered judgment against the defendants for the foreclosure and sale of the mortgaged property to pay the obligation due to plaintiff. From that judgment, the defendants appealed. On that previous appeal this court affirmed the judgment as to all the defendants except Vierra. For the reason that it could not be determined from the record whether the second mortgage dated January 20, 1928, covered the same property which was mortgaged September 11, 1924, the judgment was reversed with respect to the intervener, Vierra. This court then determined the following facts which became the law of this case:

" 'As to the intervener, Vierra, as we have shown, the uncontradicted testimony shows the execution of the agreement; shows that the intervener, together with Lemas, remained in possession of the property from the date of the execution of the agreement; also, shows knowledge of the interest of the intervener on the part of the plaintiff, and that this knowledge was possessed by the plaintiff prior to the execution of the second mortgage.'

"This court determined on the former appeal that the mere making of the executory contract by the mortgagors agreeing to sell to this appellant an interest in the mortgaged property, contrary to the provisions of section 538 of the Penal Code, 'would not affect the title of the intervener Vierra.'

"The first judgment was reversed as to Vierra only because the record failed to disclose the fact that the second mortgage

created a lien on the same property which was covered by the first mortgage. The opinion reads in that regard:

" 'The record shows, as we have stated, that the interest of the intervener Vierra *includes only a portion of the property described in the second mortgage,* which may properly be determined upon a retrial of this cause.'

█ "The judgment of foreclosure was affirmed as to the mortgagors. To that extent the former decision of this court became the law of this case and is controlling on this appeal. The former judgment was reversed as to this appellant for the reason above stated. Upon retrial of the cause it was stipulated that the second mortgage covered all of the equipment and dairy property covered in the first mortgage, including the natural increase of cattle. There is now no question that the second mortgage covers all of the property which was included in the first mortgage.

"It thus appears as the law of this case that the intervener, Vierra, became the owner of an undivided one-half interest in the dairy business, stock and equipment of the mortgagors after the execution of the original chattel mortgage. █ It was also determined that the mortgagee had knowledge of Vierra's joint interest in the property before the execution of the renewal mortgage. It was not specifically determined on the previous appeal that Vierra's interest in the business and property was subject to the lien which was created by the first chattel mortgage. It necessarily follows as a matter of law that, since the lien to secure the payment of the mortgagors' debt vested before the undivided one-half interest in the property was acquired by Vierra, he took title subject to that lien. (11 C. J. 623, secs. 338 and 341; Jones on Chattel Mortgages, (4th ed.) 517, sec. 454; *Ilfeld* v. *Ziegler,* 40 Colo. 401 [91 Pac. 825].) In 11 Corpus Juris, *supra,* it is said:

" 'In the absence of a stipulation to the contrary a mortgagor rightfully in possession may, before a default has occurred in the condition of the mortgage, sell the mortgaged property, *but the purchaser takes subject to the mortgage lien.'*

"To the same effect as the last-quoted authority is the text in Jones on Chattel Mortgages, *supra.* We therefore assume that Vierra took title to his undivided one-half interest in the dairy business, stock and equipment subject to the lien

created by the original chattel mortgage to secure the two promissory notes. The evidence supports the finding of the trial court to the effect that the original lien was not extinguished. One of the notes, to-wit, the $3,317 note, for the security of which the original chattel mortgage was executed, was not paid, and the second mortgage was given to renew the mortgage to secure that note. In spite of the fact that the mortgage was renewed with knowledge on the part of the mortgagee of the intervening sale to Vierra of the undivided interest in the business and property, the renewal of the mortgage created no new obligation. On the contrary, it merely perpetuated the existing lien on the cattle and equipment as continuing security for the payment of the $3,317 note, together with accrued interest and counsel fees as provided by the terms of the original note. Under the circumstances of this case the lien created by the first mortgage was never extinguished. The second mortgage therefore did not abridge the rights acquired by Vierra in his purchase of the property for the reason that he took title subject to that very lien to secure the payment of the identical note which was secured by the renewal mortgage. There is substantial proof that the mortgage of January 20, 1928, was executed to renew the original $3,317 note which was secured by the first mortgage, and that the original lien was therefore not extinguished. . . . The second transaction, therefore, constituted a mere renewal of the mortgage and a continuation of the existing lien, and not an extinguishment of the obligation. (2 Jones on Mortgages, (8th ed.), p. 663, secs. 1186, 1187.) In the authority last cited it is said at page 664, section 1187:

"'A mortgage does not lose its priority by taking a renewal mortgage when the debt is the same and the property is not released from the lien.'

 "The appellant contends that since he became a partner with the mortgagors in their dairy business and a joint owner of the cattle and equipment incident thereto, Mr. and Mrs. Lemas had no legal authority to mortgage partnership property or abridge his interest therein, to secure the payment of their individual debt. It is ordinarily true that a mortgage executed against partnership property by one partner only to secure his individual debt, and without

the consent of his associate partners, conveys no title and creates no lien upon the property of the partnership or against nonconsenting partners. (47 C. J., p. 858, sec. 330; 20 R. C. L., p. 910, secs. 123, 124; 50 A. L. R., p. 441, note; 54 A. L. R., p. 554, note; 1 Rowley's Modern Law of Partnership, p. 538, sec. 441.) In 47 Corpus Juris, *supra*, it is said:

" 'Since a partner cannot, without consent, apply partnership property to the payment of his individual debts, *he cannot abridge the rights* of firm creditors *or of his partners* by giving an unauthorized mortgage of partnership chattels as security of such debts; . . . the mortgagee of such share takes subject to all the equities of the nonassenting partners.'

"But in this case the mortgagor did not mortgage the *partnership property* to secure his individual debt. He mortgaged the property when he and his wife were the exclusive owners thereof and before Vierra became a partner in the business. When the property was mortgaged no partnership existed. Vierra bought his interest in that property subject to the lien which was previously created, and of which chattel mortgage the purchaser had knowledge. All that the mortgagors accomplished by renewing the mortgage was to extend the lien which then existed. . . .

"It seems equitable and in accordance with law that the property which was mortgaged to secure a specific obligation prior to the disposal of one-half interest therein should be charged with the satisfaction of that debt in accordance with the terms of the chattel mortgage, so long as the lien thereon exists, independently of any subsequent interests which may have been acquired either as a purchaser thereof or as a partner in the business. There is nothing in the former decision of this court to the contrary."

The judgment is affirmed.

Rehearing denied.