[L. A. No. 21618. In Bank. Dec. 7, 1950.]

LESLIE S. BOWDEN, as Trustee in Bankruptcy, etc., Respondent, v. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a National Banking Association), Appellant.

Hugo A. Steinmeyer, Robert H. Fabian, Samuel B. Stewart, Jr., Freston & Files and Ralph E. Lewis for Appellant.

Craig, Weller & Laugharn and Thomas S. Tobin for Respondent.

CARTER, J.—This action was brought by the trustee in bankruptcy of the Dunlap Trucking Company to recover the value of property allegedly converted by the defendant bank. From a judgment in favor of the trustee, defendant appeals.

The bankrupt, Dunlap Trucking Company, bought trucks, trailers and other automotive equipment for use in its business. In three instances it bought under conditional sales contracts payable in installments; in seven cases the purchases were financed by loans from defendant bank for which installment notes and chattel mortgages on the vehicles were given. The conditional sales contracts were assigned to defendant. Copies of all the mortgages were deposited with the Department of Motor Vehicles and the bank was registered as "legal owner" of all the vehicles pursuant to section 195 of the Vehicle Code. The last mortgage was dated February 1, 1947, and was "recorded" (copy deposited with the department) on February 4th. This brought the bankrupt's total indebtedness to the sum of $53,496. An installment note evidenced the amount of the debt secured by each mortgage and the amount of each monthly payment. The payments aggregated $2,470 per month.

By March 28, 1947, the total indebtedness had been reduced to $38,064. At the request of the bankrupt this was consolidated into one note payable in semimonthly installments of $793 and, to secure this note, Dunlap also executed a chattel mortgage (referred to as the consolidated mortgage) on the entire lot of vehicles previously covered by the series of mortgages and conditional sales contracts. It was not until July 15, 1947 (109 days later), that defendant complied with the provisions of section 195 of the Vehicle Code by depositing a copy of the consolidated mortgage with the Department of Motor Vehicles. In the interval between the date of its execution and recordation the bankrupt became indebted to a number of creditors for small sums totalling about $2,600. These claims remain unpaid and the assets of the bankrupt are insufficient to pay its liabilities in full. It does not appear whether the bankrupt has any creditors whose claims arose prior to the execution of the consolidated mortgage or subsequent to its recordation.

On September 3, 1947, Dunlap having defaulted on the payments due under the consolidated note, defendant took possession of the vehicles described in its mortgages and conditional sales contracts. Eight days later Dunlap filed its voluntary petition in bankruptcy and was adjudged a bankrupt. Plaintiff, Leslie S. Bowden, was named trustee on September 29th.

In this action commenced by the trustee, conversion is alleged on the ground that the consolidated mortgage was invalid by reason of the excessive interval between its execution

and recordation. The trial court found that defendant bank held title to three vehicles under conditional sales contracts, that it held title to three others under a mortgage dated February 1, 1947, and that the balance were covered by six separate mortgages executed and recorded in 1946; and that the consolidated mortgage was delivered to defendant "for the purpose of superseding" the prior chattel mortgages and contracts held by the bank and consolidating the existing indebtness into one debt, to be paid in consolidated installments; that, at the time of the execution of the consolidated mortgage and as security for the balance of the indebtedness, the defendant held legal title to all the vehicles, was registered as the legal owner and held the ownership certificates. The court concluded that defendant's mortgage was not valid security as against creditors whose claims arose prior to its recordation and that defendant's seizure of the chattels constituted a conversion of them for which plaintiff is entitled to judgment, without prejudice to defendant's right to establish its unsecured claim. The judgment entered for plaintiff was in the sum of $40,000.

As one ground for reversal, defendant contends that the consolidated mortgage is valid; that, under a reasonable interpretation of section 195 of the Vehicle Code, a delay in depositing a copy of a mortgage on vehicles does not render the mortgage void.*

The second argument advanced by defendant is that, even if the consolidated mortgage were invalid and subject to attack by the trustee, the original security rights created by the several separate mortgages and conditional sales contracts remained in effect, and those instruments were properly recorded.

We have concluded that the second argument advanced by defendant is sound and that the trial court erred in holding that defendant had lost its lien on the motor vehicles in question as the result of the execution of the consolidated mortgage.

■ The general rule is that the taking of a new note and mortgage or deed of trust as a renewal of, or substitution for,

---

*Sections 195, 196 and 197 of the Vehicle Code were amended in 1949 to eliminate the requirement that a copy of a mortgage on motor vehicles be deposited with the Department of Motor Vehicles in order to make the mortgage valid as against creditors or subsequent purchasers or encumbrancers. (Stats. 1949, ch. 227.) As to the present rule in regard to the renewal of a mortgage on vehicles, see section 180.7 of the Vehicle Code (added by Stats. 1947, ch. 697, § 11).

a prior note and mortgage or deed of trust does not of itself operate as a payment of the debt or as an extinction of the prior lien, in the absence of an agreement that the renewal instruments shall have that effect. (*Easton* v. *Ash,* 18 Cal.2d 530 [116 P.2d 433] ; *Schwartzler* v. *Lemas,* 12 Cal.2d 54 [82 P.2d 419] ; *Parker* v. *Tout,* 207 Cal. 590 [279 P. 431] ; *Honore* v. *Lemm,* 181 Cal. 420 [184 P. 664] ; *Bridge* v. *Connecticut Mut. Life Ins. Co.,* 167 Cal. 774 [141 P. 375] ; *Savings & Loan Soc.* v. *Burnett,* 106 Cal. 514 [39 P. 922] ; *Steinhart* v. *National Bank,* 94 Cal. 362 [29 P. 717, 28 Am.St.Rep. 172] ; *McArthur* v. *Wellman,* 20 Cal.App.2d 379 [66 P.2d 1226] ; 2 Jones on Chattel Mortgages (6th ed.), § 644; Walsh on Mortgages, p. 180; 1 Glenn on Mortgages, § 50.5; 14 C.J.S., pp. 988, 989.)

In this connection, the trial court found as heretofore stated that the execution and delivery of the consolidated mortgage was ''for the purpose of superseding certain prior chattel mortgages and conditional sales contracts . . .'' which with the remainder of the findings and conclusions constitutes a finding that the parties agreed that the consolidated mortgage was to extinguish the prior security interests of defendant. We have then the question as to whether there was any evidence to support that finding. It has been held that the transaction itself is not evidence of such an agreement even where the new mortgage covers additional property of the mortgagor and the new note provides for a reduction in the interest rate (*Pacific Nat. Agr. Credit Corp.* v. *Wilbur,* 2 Cal. 2d 576 [42 P.2d 314]), or where the renewal is for different amounts upon different terms of payment (*Parker* v. *Tout, supra; Tolman* v. *Smith,* 85 Cal. 280 [24 P. 743] ; *Howell* v. *Dowling,* 52 Cal.App.2d 487 [126 P.2d 630] ). ''The circumstances of the transaction, it is true, may be used to determine the character of the exchange. But the circumstances, to prevail, must be such as to establish the mutual agreeement of the parties.'' (*Savings & Loan Soc.* v. *Burnett, supra,* 106 Cal. 514, 531.)

The fact that the original note is marked ''paid'' or that there is a recital of payment in the renewal instruments is not conclusive evidence that the indebtedness has been discharged. (*Gnarini* v. *Swiss American Bank,* 162 Cal. 181 [121 P. 726] ; *Bonestell* v. *Bowie,* 128 Cal. 511 [61 P. 78] ; *Howell* v. *Dowling, supra; McArthur* v. *Wellman, supra.*)

The necessary agreement to accept the renewal instruments in payment and discharge of the prior debt and lien is not

necessarily established by evidence, standing alone, that the old mortgage has been released of record (*Copp* v. *Millen,* 11 Cal.2d 122 [77 P.2d 1093] ; *Pacific Nat. Agr. Credit Corp.* v. *Wilbur, supra; White* v. *Stevenson,* 144 Cal. 104 [77 P. 828] ; *Van Sandt* v. *Alvis,* 109 Cal. 165 [41 P. 1014, 50 Am.St. Rep. 25]), although the release recites that the debt has been paid (*Palmer* v. *Emanuel,* 77 Cal.App. 766 [247 P. 609]).

█ Neither will the consolidation of several notes and mortgages into single instruments ordinarily furnish evidence of an agreement to relinquish the prior rights. (*Savings & Loan Soc.* v. *Burnett, supra; Tolman* v. *Smith, supra; Swift* v. *Kraemer,* 13 Cal. 526 [73 Am.Dec. 603].) Indeed, it is indicated in some decisions that the party alleging payment and discharge must prove an *express* agreement that the renewal note and mortgage should so operate. (*Pacific Nat. Agr. Credit Corp.* v. *Wilbur, supra,* 2 Cal.2d 576, 585; *Bonestell* v. *Bowie, supra,* 128 Cal. 511, 515; *Steinhart* v. *National Bank, supra,* 94 Cal. 362, 367; see *Comptoir D'Escompte* v. *Dresbach,* 78 Cal. 15, 20 [20 P. 28] ; 2 Jones on Mortgages (8th ed.), p. 666.)

█ In this case the president and principal stockholder of the Dunlap Company, the mortgagor, testified that there was no discussion between himself and the representative of the bank at the time the consolidated mortgage was signed. It is evident from the foregoing principles that the execution of the consolidated mortgage did not of itself have the effect of extinguishing the preexisting separate mortgages and contracts of defendant.

Two other factors merit discussion as bearing on the question of agreement. Plaintiff points to the fact that some of the vehicles were held under conditional sales contracts and cites 16 California Jurisprudence, page 333, for the proposition that the taking of new or additional security may operate to destroy an existing lien in certain exceptional cases, as ''where it is worked by necessary intendment growing out of the agreement of the parties, in that the taking of the later security is inconsistent with the continued existence thereafter of the lien . . .'' This language is taken from *Martin* v. *Becker,* 169 Cal. 301, at 309 [146 P. 665, Ann.Cas. 1916D 171], and apparently has reference to vendors' liens and conditional sales contracts, although that case involved a mechanic's lien. It has been said that, according to the weight of authority, the interest of the conditional seller of chattels is lost by the taking of a chattel mortgage on the same property. (47 Am.Jur., Sales, § 974.) The reason generally given

is that the two types of security are inconsistent with each other so that both cannot exist together with respect to the same property. (*Birkeland* v. *Clearwater Concentrating Co.,* 64 Idaho 122 [127 P.2d 1047]; *Buckeye Cotton Oil Co.* v. *Westerfield,* 186 Ark. 505 [54 S.W.2d 295]; *Intertype Corp.* v. *Pulver,* 2 F.Supp. 4.) This reasoning is based on the traditional theory that the conditional seller retains the legal title, whereas, in the case of a chattel mortgage the title is in the mortgagor and the mortgagee has only a lien upon the property. (*Kettwig* v. *Aero Inv. Co.,* 191 Minn. 500 [254 N.W. 629]; Jones on Chattel Mortgages and Conditional Sales (6th ed.), § 1229.)

Whether the acceptance by the seller of a chattel mortgage on the same property necessarily supersedes the conditional sale contract appears to be an open question in this state. Plaintiff cites several cases stating the truism that "the vendor cannot have a lien upon personal property of which he is the owner." (*Alexander* v. *Walling,* 105 Cal.App. 525, 534 [288 P. 138]; *Katzenbach & Bullock Co.* v. *Breslauer,* 51 Cal. App. 756, 757 [197 P. 967]; *Standard Auto Sales Co.* v. *Lehman,* 43 Cal.App. 763 [186 P. 178].) These decisions, however, do not involve the problem presented in this case. The two cases first cited involved executory contracts for the sale of personal property and the question decided was that, because a sale had not been completed, the sellers need not proceed pursuant to the Civil Code sections then in effect which dealt with the enforcement of liens of unpaid sellers. (See also *Eads* v. *Kessler,* 121 Cal. 244 [53 P. 656]; *Rayfield* v. *Van Meter,* 120 Cal. 416 [52 P. 666]; *Gibbs* v. *Ranard,* 86 Cal. 531 [25 P. 63].) The Lehman case holds that the security interest of a conditional seller is not a "mortgage, deed of trust or lien . . . or . . . pledge" within the meaning of the attachment statute (Code Civ. Proc., § 537(1)). That decision is based on a strict construction of a statute listing certain types of security, the existence of which will preclude the right to attachment, the theory being that other kinds of security are impliedly excluded from its operation. (*Standard Auto Sales Co.* v. *Lehman, supra,* 767; *Hougham* v. *Rowland,* 33 Cal.App. 2d 11, 17 [90 P.2d 860].) In *Timm Aircraft Corp.* v. *Byram,* 34 Cal.2d 632 [213 P.2d 715], the provisions of an agreement between a contractor and the United States which gave the government a lien on the funds advanced were considered to be a factor indicating that the contractor was the owner of the funds for tax purposes.

We have concluded that an agreement to supersede the prior security interests of defendant is not to be inferred from the circumstances that defendant's rights in some of the vehicles were represented by conditional sales contracts and that the consolidated mortgage included such vehicles. The reasoning in contrary decisions of courts of other jurisdictions is not convincing. ■ The doctrine that one cannot have a lien on property of which he is the owner is not applicable to the situation presented in this case for the reason that the conditional seller is not the owner of the property within the meaning of that statement. The respective property interests of the parties under a conditional sale are materially different than in the cases heretofore discussed dealing with wholly executory contracts for the sale of personal property where no interest had passed to the buyers, the sellers having retained the complete ownership of the property. (See Hines, *Rights and Remedies Under California Conditional Sales,* 23 Cal.L.Rev. 557.) "In a conditional sale, the title in the seller is for security only, to assure the payment of the purchase price. It carries with it none of the ordinary incidents of ownership. The buyer has the possession and use of the property to the complete exclusion of the seller, subject only to the seller's remedies in case of default. Both in a practical and a legal sense the buyer is the beneficial owner." (*County of San Diego* v. *Davis,* 1 Cal.2d 145, 147 [33 P.2d 827].)

Thus, it has been held that the conditional seller, although registered as the "legal owner," is not personally liable for taxes assessed on the automobile conditionally sold. (*County of San Diego* v. *Davis, supra; cf. Sherman* v. *Quinn,* 31 Cal. 2d 661 [192 P.2d 17].) ■ The conditional buyer has an insurable interest in the property sold, at least to the extent of his payments on account. (*Coniglio* v. *Connecticut Fire Ins. Co.,* 180 Cal. 596, 599 [182 P. 275, 5 A.L.R. 805] ; *Dunne* v. *Phoenix Ins. Co.,* 113 Cal.App. 256, 260 [298 P. 49] ; *Zecchini* v. *Chicago Fire & Marine Ins. Co.,* 104 Cal.App. 458 [285 P. 1072] ; *Smith* v. *Jim Dandy Markets,* 172 F.2d 616, 618; see *Fageol Truck & Coach Co.* v. *Pacific Ind. Co.,* 18 Cal.2d 731, 744 [117 P.2d 661].) ■ "The interest of a purchaser under a conditional contract of sale, though it does not amount to a legal title, may be made the subject of a chattel mortgage which will be good otherwise than as against the vendor." (*Pacific States Sav. & Loan Co.* v. *Strobeck,* 139 Cal.App. 427, 432 [33 P.2d 1063] ; *Glen Falls Indemnity Co.* v. *Perscallo,* 96 Cal.App.2d 799, 803 [216 P.2d 567] ; see *Walker* v. *Hous-*

*ton,* 215 Cal. 742 [12 P.2d 952, 87 A.L.R. 937] ; note, 87 A.L.R. 941.) ▮ Likewise, the buyer's interest may be conveyed subject to the rights of the conditional seller. (*Davies-Overland Co.* v. *Blenkiron,* 71 Cal.App. 690 [236 P. 179].) The risk of loss, a normal incident of the beneficial ownership, is now placed on the purchaser in possession. (Civ. Code, § 1742(a) ; *Beaudry* v. *Peterson,* 50 Cal.App.2d 478, 482 [123 P.2d 108] ; see Williston on Sales (rev. ed.), §§ 303, 304.) ▮ The reserved title of the conditional seller is discharged upon a tender of the balance due by the buyer (*Spencer Kennelly, Ltd.* v. *Bank of America,* 19 Cal.2d 586, 588 [122 P.2d 552] ; *Wilkinson* v. *Fisherman's & Canner's Supply Co.,* 57 Cal.App. 165 [206 P. 761]) or by the mortgagee of the buyer (*Walker* v. *Houston, supra,* 215 Cal. 742). "(T)he title reserved by a conditional seller for the purpose of securing payment of the purchase price is no less an incident of an obligation to pay money than a mortgage or pledge. The title is reserved for security only. The buyer has the full right of possession and use unless he defaults, and may secure title by performance of his obligation without any further assent by the seller. The sole interest of the seller is in the receipt of the price, and his reserved title cannot be used for any other purpose. Hence it follows that tender of the balance of the price should have the effect of discharging the title of the seller and vesting such title in the buyer, and it has been so held." (*Walker* v. *Houston, supra,* 746-747.) ▮ The conditional seller of a motor vehicle, while out of possession, is not deemed the owner thereof within the provisions of the statute imposing liabiity on automobile owners for the negligence of persons operating their vehicles with permission. (Veh. Code, § 402(f) ; *Swaney* v. *Black,* 26 Cal.App.2d 314 [79 P.2d 176].)

These considerations amply illustrate that a· conditional sale, as well as a chattel mortgage, involves a division of interests in the property sold. (For further discussion, see Jones, Chattel Mortgages and Conditional Sales, (6th ed.), §§ 1263-1279; Williston on Sales (rev. ed.), §§ 337, 579; Vold on Sales, § 95.) The general rule applicable to the transactions here in question is that the acceptance of one form of security as a substitute for, or in addition to, another form of security does not, of itself, have the effect of extinguishing the original security interest. (*Crisman* v. *Lanterman,* 149 Cal. 647, 653 [87 P. 89, 117 Am.St.Rep. 167] ; *Exchange Bank of Perry* v. *Nichols,* 196 Okla. 283 [164 P.2d 867, 872] ; *Smith* v. *Thomas,* 42 Idaho 375 [245 P. 399, 401] ;

*Applegate* v. *Quackenbush,* 1 N.J.Super. 327 [61 A.2d 577] ; *Morrison* v. *Steinberg,* 166 App.Div. 264 [151 N.Y.S. 607], aff'd in 222 N.Y. 569 [118 N.E. 1069] ; *Greenfield* v. *Petty,* 346 Mo. 1186 [145 S.W.2d 367, 370] ; *Tansil* v. *McCumber,* 201 Iowa 20 [206 N.W. 680, 685] ; *Gravlee* v. *Lamkin,* 120 Ala. 210 [24 So. 756, 759] ; *Russell* v. *Bosworth,* 106 Ill.App. 314; *Maloney* v. *Lafayette Bldg. & Loan Assn.,* 69 Ill.App. 314; *Ladd* v. *Wiggin,* 35 N.H. 421, 426 [69 Am.Dec. 551] ; 36 Am.Jur. 917.) An exception to that rule is not warranted where the first security is in the form of a conditional sale contract. (*Kelley* v. *Brack,* 214 Ky. 9 [282 S.W. 190] ; *United States Fidelity & Guaranty Co.* v. *Northwest Engineering Co.,* 146 Miss. 476 [112 So. 580, 583] ; *Greenwald & Champenois* v. *Tinsley,* 90 Miss. 38 [42 So. 89] ; *Page* v. *Edwards,* 64 Vt. 124 [23 A. 917] ; *McArthur Bros. Mercantile Co.* v. *Hagihara,* 22 Ariz. 100 [194 P. 336, 13 A.L.R. 1038] ; *Standard Steam Laundry* v. *Dole,* 22 Utah 311 [61 P. 1103, 1106].)

As evidence of an agreement that the consolidated mortgage was taken in satisfaction of the prior mortgages and contracts, plaintiff points to a clause in the instrument which reads as follows:

"The mortgagor does hereby warrant that he is the sole owner of all the within mentioned personal property and that there are no liens or encumbrances or adverse claims of any kind whatever thereon or any part thereof."

The mortgage was signed by the president and secretary of Dunlap, the mortgagor, but it was not signed by any representative of the defendant bank. Such a warranty on the part of the mortgagor does not constitute an express agreement by the defendant mortgagee to give up its previous security rights. There is no reason to suppose that the creditors represented by the plaintiff, as trustee in bankruptcy of the mortgagor, were misled by the warranty clause. At the time the consolidated mortgage was executed, and during the period when those claims arose, the defendant was registered as the legal owner of the vehicles and it held the ownership certificates pertaining thereto. The creditors of the mortgagor could therefore have ascertained that defendant claimed an interest in the vehicles.

It follows that defendant's interests under the separate mortgages and contracts were not extinguished by the execution of the consolidated mortgage and that defendant was not guilty of conversion in repossessing the property in ac-

cordance with the terms of the prior instruments. Since we have concluded that there is no evidence to sustain the finding of the trial court that the parties agreed that the consolidated mortgage was to extinguish the interests created by the original instruments it is not necessary to consider the other points raised by defendant.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.